United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 12, 2007**

Charles R. Fulbruge III
Clerk

REVISED JUNE 25, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 06-40335

---

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

KEYON LAKEITH MITCHELL; DUFORD LEE MITCHELL

Defendants - Appellants

---

Appeals from the United States District Court
for the Eastern District of Texas, Sherman

---

Before KING, GARZA, and PRADO, Circuit Judges.

KING, Circuit Judge:

Defendants-appellants Keyon LaKeith Mitchell and Duford Lee Mitchell appeal their convictions and sentences stemming from their involvement in a crack-cocaine conspiracy in Paris, Texas. After a jury trial, both were convicted of one count of conspiracy to possess with intent to distribute crack cocaine and one count of possession of a firearm in furtherance of a drug-trafficking crime. For the reasons that follow, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The government presented evidence at trial that defendant-appellant Keyon Mitchell and co-defendants Corwin Jeffrey and

Raphael Robinson[1] were central figures in a crack-cocaine conspiracy in Paris, Texas.

Keyon Mitchell's involvement with crack cocaine began in 2002 when he started driving his friend Jeffrey to DeKalb, Texas——Jeffrey's own car was not reliable enough to take on the highway——so that Jeffrey could purchase crack cocaine to sell in Paris.  Keyon Mitchell knew of the reason for the trips to DeKalb; in fact they took his mother's green sedan in order to avoid detection by police.  Keyon Mitchell drove Jeffrey to DeKalb approximately ten times in 2002, and Jeffrey purchased four to six ounces of crack cocaine on each trip.

Seeing how much money Jeffrey was making by selling crack cocaine inspired Keyon Mitchell to start selling it himself. Jeffrey initially sold Keyon Mitchell two ounces of crack cocaine and showed him how to cut it up, weigh it, and repackage it into smaller amounts for resale.  Keyon Mitchell sold this quantity quickly and then continued buying crack cocaine from Jeffrey in two-ounce increments, at least ten times.  On one occasion, Keyon Mitchell and Jeffrey pooled their money together to purchase a quarter-kilogram (nine ounces) in DeKalb to sell in Paris.

Later in 2002, Keyon Mitchell, Jeffrey, and Robinson began traveling together on drug runs to Dallas, Texas.  Robinson had a supplier in Dallas named "Bowleg."  The three men went on at

---

[1] Both Jeffrey and Robinson were indicted in this case, and each pleaded guilty to conspiracy pursuant to a plea agreement.

least five runs together in 2002 and 2003 to purchase crack cocaine from "Bowleg." On each trip, the men would drive to the supplier's home, Keyon Mitchell and Jeffrey would give their money to Robinson, and Robinson would go into the home and procure the drugs for all three of them. Each individual would purchase four to six ounces of crack cocaine per trip. The men would then sometimes transport the drugs back to Paris themselves, but on other occasions they would have another individual transport it for them in exchange for drugs. Once back in Paris, the men would repackage the drugs in smaller quantities and then distribute them.

Then at some point in 2003, the men found a new supplier, Chris Culberson, who would deliver the drugs directly to them in Paris. Culberson would not make a delivery for less than nine ounces of crack cocaine. About ten to fifteen times over an approximately one-year period, Culberson delivered crack cocaine to Robinson's home. On about five of these occasions, Robinson agreed to purchase crack cocaine from Culberson on behalf of Keyon Mitchell; Keyon Mitchell gave Robinson his payment in advance, and Robinson conducted the transactions once Culberson arrived. Generally, each man would purchase nine ounces of crack cocaine from Culberson. They distributed the drugs they purchased from Culberson in the Paris area.

Numerous witnesses testified that Keyon Mitchell sold them crack cocaine. The amounts of crack that Keyon Mitchell sold

-3-

ranged in quantity from approximately 1.5 grams to 2 ounces.[2]

Defendant-appellant Duford Mitchell, Keyon Mitchell's cousin, also sold crack cocaine in Paris during this period. Duford Mitchell generally obtained his drugs from Keyon Mitchell; indeed, the government alleged that Duford Mitchell was Keyon Mitchell's chief distributor. Numerous witnesses testified that they either purchased crack cocaine from Duford Mitchell or saw him selling crack cocaine in the Booth Alley area of Paris.

On October 1, 2003, Keyon Mitchell, Duford Mitchell, and Jeffrey participated in a break-in of Robinson's home in an attempt to steal Robinson's stash of crack cocaine. On that date, Culberson had delivered an order of crack cocaine to Robinson's home at around 1:00 a.m. Jeffrey and Keyon Mitchell knew that Culberson was making this delivery, and they hatched a scheme to steal the fresh stash so that they could "make extra money." Keyon Mitchell recruited Duford Mitchell into the plan, and Duford Mitchell in turn recruited Brandon Grant. Jeffrey and Keyon Mitchell purchased four ski masks for the robbery. The four robbers met at Keyon Mitchell's father's house, where they gathered firearms, and then they went to Jeffrey's house to pick up black shirts. At about 2:00 a.m., Keyon Mitchell drove them to Robinson's home, where he stayed in the car—his arm was in a

---

[2] One ounce is equivalent to 28.35 grams. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1 cmt. n.10, Measurement Conversion Table (2006).

sling, and he was concerned the sling might reveal his identity to Robinson——while Jeffrey, Duford Mitchell, and Grant, wearing the ski masks and black shirts, entered Robinson's home. Duford Mitchell and Grant also carried firearms. Jeffrey, Duford Mitchell, and Grant scoured Robinson's house for the crack-cocaine stash, but they never found it, and they ultimately left empty-handed.

Keyon Mitchell and Duford Mitchell (collectively, "the defendants") were charged in a two-count superseding indictment on March 10, 2005. Count one charged them with conspiracy to possess with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 846. Count two charged them with possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1); count two specified that the underlying drug-trafficking crime was possession with intent to distribute more than 50 grams of crack cocaine.

The defendants proceeded to trial, and a jury convicted them on both counts. They now appeal.

## II. SUFFICIENCY OF THE EVIDENCE

Keyon Mitchell first maintains that there was insufficient evidence to support his conviction on count one for conspiracy to possess with intent to distribute fifty grams or more of crack cocaine.

### A. Standard of Review

-5-

Because Keyon Mitchell preserved his challenge to the sufficiency of the evidence, we review de novo the district court's denial of his Rule 29 motion for a judgment of acquittal. United States v. Anderson, 174 F.3d 515, 522 (5th Cir. 1999) (citing United States v. Payne, 99 F.3d 1273, 1278 (5th Cir. 1996)).

In reviewing the sufficiency of the evidence, we view the evidence and the inferences drawn therefrom in the light most favorable to the verdict, and we determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. Id. (citing United States v. Burton, 126 F.3d 666, 669 (5th Cir. 1997); Payne, 99 F.3d at 1278). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." Id. (quoting Burton, 126 F.3d at 669-70). "Moreover, our standard of review does not change if the evidence that sustains the conviction is circumstantial rather than direct." Id. (citing Burton, 126 F.3d at 670; United States v. Cardenas, 9 F.3d 1139, 1156 (5th Cir. 1993); United States v. Bell, 678 F.2d 547, 549 n.3 (Former 5th Cir. 1982)).

**B. Analysis**

Count one charged that Keyon Mitchell, together with other

named and unnamed individuals, conspired to possess with intent to distribute fifty grams or more of a cocaine mixture or substance containing a detectable amount of crack cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.  To have proved Keyon Mitchell's guilt on count one, the government must have established (1) the existence of an agreement between two or more persons to possess with intent to distribute fifty grams or more of crack cocaine, (2) that Keyon Mitchell knew of the conspiracy and intended to join it, and (3) that he participated in the conspiracy.  United States v. Morris, 46 F.3d 410, 414-15 (5th Cir. 1995) (citing United States v. Maseratti, 1 F.3d 330, 337 (5th Cir. 1993)).  "Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence."  United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994) (citing Cardenas, 9 F.3d at 1157).  "An agreement may be inferred from a 'concert of action.'"  Id. (citing Cardenas, 9 F.3d at 1157; United States v. Natel, 812 F.2d 937, 940 (5th Cir. 1987)).

Keyon Mitchell contends that the government failed to present sufficient evidence of an agreement between the alleged co-conspirators.  He argues that the government proved merely that there were numerous buyer/seller relationships, not that there was a conspiracy.  He concedes that there was sufficient evidence that he and other defendants trafficked in crack cocaine, but he asserts that the traffickers were acting

-7-

independently rather than in concert.  He points to the testimony of alleged co-conspirators that each controlled what he sold, where he sold, and the prices he charged, and that no profits were shared between them.

But the evidence amply supports a finding that Keyon Mitchell entered into an agreement with Jeffrey and Robinson to purchase crack cocaine together for distribution in Paris.  On numerous occasions, the three men agreed to drive to Dallas together, they agreed to have Robinson conduct the transaction with "Bowleg" on behalf of all three of them, and they agreed on a method of transporting the drugs back to Paris for distribution.  And each trip involved the purchase of at least twelve ounces of crack cocaine in total (four ounces each), which is significantly greater than 50 grams.  Even in the absence of any formal agreement to violate the narcotics laws, the jury certainly could have inferred such an agreement from the individuals' concert of action.  We therefore conclude that there was sufficient evidence from which a jury could have found beyond a reasonable doubt that Keyon Mitchell conspired to possess with intent to distribute more than fifty grams of crack cocaine.

## III. MATERIAL VARIANCE

### A. Standard of Review

A material variance occurs "when the proof at trial depicts

a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense." United States v. Delgado, 401 F.3d 290, 295 (5th Cir. 2005).  We determine whether a variance occurred by comparing the evidence presented at trial with the language of the indictment.  See United States v. Medina, 161 F.3d 867, 872 (5th Cir. 1998).  If a variance did occur, we reverse only if the variance prejudiced the defendant's substantial rights.  See Delgado, 401 F.3d at 295; Medina, 161 F.3d at 872.  In determining whether a material variance resulted in prejudice, we employ a harmless-error analysis.  United States v. Ramirez, 145 F.3d 345, 351 (5th Cir. 1998); United States v. Dean, 59 F.3d 1479, 1491 (5th Cir. 1995).

The question whether the evidence establishes the existence of one conspiracy (as alleged in the indictment) or multiple conspiracies is a fact question within the jury's province. United States v. Morrow, 177 F.3d 272, 291 (5th Cir. 1999) (per curiam) (citing United States v. Morgan, 117 F.3d 849, 858 (5th Cir. 1997)).  We will affirm the jury's finding that the government proved a single conspiracy "unless the evidence and all reasonable inferences, examined in the light most favorable to the government, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt."  Morris, 46 F.3d at 415 (quoting United States v. DeVarona, 872 F.2d 114, 118 (5th Cir. 1989)); see also Morrow, 177 F.3d at 291 (quoting Morgan,

-9-

117 F.3d at 858).  Even where the evidence points to multiple conspiracies rather than the single conspiracy charged in the indictment, the variance does not affect the defendant's substantial rights as long as the government establishes the defendant's involvement in at least one of the proved conspiracies.  Morrow, 177 F.3d at 291.

## B. Count One (Conspiracy)

Keyon Mitchell contends that even if there was sufficient evidence to prove a conspiracy, the evidence points to multiple conspiracies, not the single conspiracy charged in count one.  He argues that a material variance between the charged conspiracy and the proof at trial requires reversal of his conviction.

"The principal considerations in counting the number of conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings."  Id. (citing Morgan, 117 F.3d at 858); see also Morris, 46 F.3d at 415 (citing United States v. Richerson, 833 F.2d 1147, 1153 (5th Cir. 1987)).

This court has broadly defined the criterion of a common goal in counting conspiracies.  Morrow, 177 F.3d at 291; see also Morris, 46 F.3d at 415 ("In fact, one panel has remarked that 'given these broad "common goals" the common objective test may have become a mere matter of semantics.'" (quoting Richerson, 833 F.2d at 1153)).  The jury could reasonably have concluded that

-10-

the common goal of the charged conspiracy in this case was to derive personal gain from the sale of crack cocaine in Paris.

Under the second prong, wherein we examine the nature of the scheme, "the existence of a single conspiracy will be inferred where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture, where there are several parts inherent in a larger common plan." Morris, 46 F.3d at 416 (citing United States v. Elam, 678 F.2d 1234, 1246 (5th Cir. 1982)). The evidence supports an inference that the joint, coordinated purchases of crack cocaine from "Bowleg" in Dallas and from Culberson in Paris were necessary or at least advantageous for the co-conspirators' sale of crack cocaine in Paris.

The third prong "examines the interrelationships among the various participants in the conspiracy. The more interconnected the various relationships are, the more likely there is a single conspiracy." Id. But "there is no requirement that every member must participate in every transaction to find a single conspiracy. Parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy." Id. (quoting Richerson, 833 F.2d at 1154 (footnote omitted)). The evidence does not seem to evince significant overlap between the participants in the alleged single conspiracy. Below the top level of Keyon Mitchell, Jeffrey, and Robinson, there was little evidence of interaction

-11-

among the distributors.

But we need not determine conclusively whether there was a variance (i.e., how many conspiracies were proved) because even assuming arguendo that Keyon Mitchell has demonstrated that there was a variance, the variance does not necessitate reversal since he has not demonstrated that it affected his substantial rights. The most common prejudice to a substantial right caused by a variance in a conspiracy trial is transference of guilt from one co-defendant to another in a trial with multiple defendants.  Id. at 417.  Thus, "where the indictment alleges a single conspiracy and the evidence established each defendant's participation in at least one conspiracy a defendant's substantial rights are affected only if the defendant can establish reversible error under general principles of joinder and severance."  Id. (quoting United States v. Jensen, 41 F.3d 946, 956 (5th Cir. 1994)); United States v. Faulkner, 17 F.3d 745, 762 (5th Cir. 1994); see also Morrow, 177 F.3d at 291.  Keyon Mitchell has not demonstrated error under the rules of joinder and severance; indeed, he acknowledges that his trial was initially properly joined with Duford Mitchell's.[3]  Furthermore, any risk of prejudice was minimized by the district court's instruction to the jury that it must acquit if it were to find that a defendant

---

[3] Keyon Mitchell does argue that the district court should have severed the trial after the trial began because of an incident that occurred after the first day of trial.  But we reject this argument in Part V.

-12-

was not a member of the charged conspiracy, even if it were to find that the defendant was a member of some other conspiracy. See Morrow, 177 F.3d at 291-92; Morris, 46 F.3d at 417-18.

## B. Count Two (Firearms)

Both Keyon Mitchell and Duford Mitchell contend that there was a material variance between count two of the indictment, which charged them with possession of a firearm in furtherance of a drug-trafficking crime, and the government's proof at trial. We conclude that although there was a variance, it was not prejudicial.

Count two charged that "[o]n or about October 1, 2003," the defendants violated 18 U.S.C. § 924(c)(1)[4] by "knowingly possess[ing] a firearm in furtherance of a drug trafficking crime . . . , to wit: possession with intent to distribute more than 50 grams or more [sic] of a cocaine mixture or substance containing a detectable amount of cocaine base, namely, crack cocaine, a Schedule II controlled substance."

The defendants assert that there was a material variance because the government never proved that they committed the drug-trafficking crime named in the indictment, possession with intent

---

[4] Section 924(c)(1)(A) makes it unlawful for "any person [to], during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, use[] or carr[y] a firearm, or [to], in furtherance of any such crime, possess[] a firearm." The term "drug-trafficking crime" includes "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2).

-13-

to distribute, since there was no evidence they actually possessed crack cocaine on October 1, 2003. The defendants point to the fact that although they participated in a break-in of Robinson's home in an effort to steal his crack cocaine, they never found it, and therefore they never possessed it. The defendants also maintain that there was another, different material variance because the government argued that it could prove the defendants' guilt by relying on other incidents——apart from the October 1, 2003, robbery——when the defendants possessed firearms and crack cocaine together.

We will consider the second alleged variance first. At the hearing on the defendants' Rule 29 motion for a judgment of acquittal after the close of the government's case-in-chief, the defendants pointed out that the government had not proved they actually possessed crack cocaine on October 1, 2003. The government responded, inter alia, that since the indictment used the non-exclusive language "[o]n or about," the government could "just take out the date of October 1" and point to occasions of firearms possession at any time during the course of the conspiracy. The district court appears to have agreed with the government's argument; the court denied the Rule 29 motion, reasoning that "generally speaking, proof of any date before the return of the indictment . . . and within the statute of limitations is sufficient."

The defendants assert in essence that to the extent the

-14-

government relied on other occasions of firearms possession apart from the events of October 1, 2003, it prosecuted them for a crime other than the one charged in the indictment. Although the defendants do not specifically describe what occurred below as a "constructive amendment," they in essence argue that the indictment was constructively amended. "A constructive amendment occurs when the government changes its theory during trial so as to urge the jury to convict on a basis broader than that charged in the indictment, or when the government is allowed to prove 'an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment.'" United States v. Robles-Vertiz, 155 F.3d 725, 728 (5th Cir. 1998) (quoting United States v. Salvatore, 110 F.3d 1131, 1145 (5th Cir. 1997)).

The problem with the defendants' argument, however, is that the government did not change its theory at trial since it did not rely on occurrences of other firearms possession in its argument to the jury. The government's argument that it could "just take out the date of October 1" from the indictment and rely on other occurrences of firearms possession was an argument before the judge in order to defeat the Rule 29 motion. The government's argument to the jury with respect to count two focused almost exclusively on the October 1, 2003, robbery.[5] The

---

[5] The government did mention during closing argument that both defendants possessed firearms during the time frame of the

-15-

government argued to the jury that there actually was crack cocaine present in Robinson's house (hidden in a trash-can liner) but that the robbers had simply not looked in the right place. Furthermore, the court did not specifically instruct the jury that it could look at occurrences of firearms possession apart from October 1, 2003; the jury charge simply included this circuit's pattern "on or about" instruction.[6]  We therefore conclude that the indictment was not constructively amended.

We do agree, however, that there was a variance between the language of count two and the evidence presented at trial: although the indictment charged that the underlying drug-trafficking crime was possession with intent to distribute more than fifty grams of crack cocaine, the defendants never actually possessed crack cocaine during the course of the robbery since

---

conspiracy, but it did so in only one sentence as to each defendant.  The government's argument for count two cannot fairly be characterized as relying on occurrences of firearms possession apart from the date alleged in the indictment.

[6] The jury instructions provided:

> You will note that the Superseding Indictment charges that the offenses were committed between certain dates or [sic] on or about a specified date.  The government does not have to prove that the crimes were committed on those exact dates, so long as the government proves beyond a reasonable doubt that the defendants committed the crimes on dates reasonably near the dates stated in the Superseding Indictment.

Cf. FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 1.18 (2001).

they found no drugs at Robinson's house.  Instead, the government

proved that the defendants possessed firearms in furtherance of a

different drug-trafficking crime: <u>attempted</u> possession with

intent to distribute crack cocaine.[7]

Yet we do not reverse the defendants' convictions because

the variance did not prejudice the defendants' rights.  Rule

31(c) of the Federal Rules of Criminal Procedure permits

conviction of a lesser included offense of the charged offense

even though the lesser offense was not charged in the indictment.

<u>See</u> FED. R. CRIM. P. 31(c)(1) ("A defendant may be found guilty

of . . . an offense necessarily included in the offense

charged.").  Possession of a firearm in furtherance of <u>attempted</u>

---

[7] Attempted possession with intent to distribute is proscribed by 21 U.S.C. § 846, which provides: "Any person who attempts or conspires to commit any offense defined in [21 U.S.C. §§ 801-904] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  To establish attempt to possess with intent to distribute, the government must prove (1) that the defendants acted with the kind of culpability required for the crime of possession with intent to distribute and (2) that the defendants engaged in conduct constituting a substantial step toward commission of the crime.  <u>See, e.g.</u>, <u>United States v. Redd</u>, 355 F.3d 866, 872-73 (5th Cir. 2003).

The government proved overwhelmingly that the defendants attempted to possess with intent to distribute more than fifty grams of crack cocaine.  First, the government proved at trial that the defendants intended to take Robinson's stash of crack cocaine, which was at least nine ounces, so that they could "make extra money."  And second, the government proved that the defendants took substantial steps toward commission of the crime; for example, Keyon Mitchell procured firearms for the robbery and drove his cohorts to and from Robinson's house, and Duford Mitchell actually entered Robinson's house and searched for the crack cocaine.

possession with intent to distribute is a lesser included offense of possession of a firearm in furtherance of the crime of <u>completed</u> possession with intent to distribute.  <u>See</u> <u>United States v. Gaskin</u>, 364 F.3d 438, 453 (2d Cir. 2004) ("[A]ttempted drug possession in violation of 21 U.S.C. § 846 is simply a lesser-included offense of the drug possession proscribed by § 841(a)(1).");  <u>see also</u> <u>United States v. Remigio</u>, 767 F.2d 730, 733 (10th Cir. 1985) ("The crime of attempt is a lesser included offense of the substantive crime.").  As the Sixth Circuit stated in <u>United States v. Solorio</u>, "[t]he concept of variance is designed to prevent the prosecution from convicting the defendant of a different offense, not a lesser variation on the charged offense."  337 F.3d 580, 590 (6th Cir. 2003) (holding that conviction of a lesser included offense did not constitute prejudicial variance because such a conviction was permitted under Rule 31(c) and therefore the variance did not affect the defendant's ability to defend himself).

Moreover, because the facts overwhelmingly support conviction of the lesser offense, we may modify the judgment to reflect such a conviction without affecting the defendants' substantial rights.  <u>See</u> <u>United States v. Castro-Trevino</u>, 464 F.3d 536, 543 (5th Cir. 2006) (modifying judgment to reflect offense of attempt where the defendant pleaded guilty to completed offense but the facts reflected that the defendant unsuccessfully attempted to commit the offense).

Accordingly, we decline to reverse the defendants' convictions on count two. But we do modify the judgment to reflect convictions for the lesser offense of possession of a firearm in furtherance of the drug-trafficking crime of attempted possession with intent to distribute more than fifty grams of crack cocaine.

## IV. RULE 404(b) EVIDENCE

Duford Mitchell argues that the district court improperly permitted testimony that he pulled a gun on another individual during the time frame of the conspiracy.

This court reviews a district court's decision to admit Rule 404(b) evidence in a criminal case under a heightened abuse-of-discretion standard. United States v. Jackson, 339 F.3d 349, 354 (5th Cir. 2003) (citing United States v. Wisenbaker, 14 F.3d 1022, 1028 (5th Cir. 1994)). Even if the district court abused its discretion in admitting the Rule 404(b) evidence, we do not reverse if the error was harmless. See FED. R. CRIM. P. 52(a); Jackson, 339 F.3d at 354 (citing United States v. Torres, 114 F.3d 520, 526 (5th Cir. 1997)).

Evidence of other crimes, wrongs, or acts is admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b). The admissibility of evidence pursuant to Rule 404(b) is analyzed in a two-step inquiry. "First, it must be

determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character.  Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403."  United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

Robinson testified that during the course of the conspiracy, he saw Duford Mitchell pull a gun on Tommy Johnson on an occasion when Keyon Mitchell and Johnson got into a physical fight.  Johnson also testified that Duford Mitchell pulled a gun on him once.  The district court permitted the testimony, over Duford Mitchell's objection, only for the purpose of showing that Duford Mitchell possessed a firearm during the conspiracy, reasoning that his firearm possession was relevant to his intent.  The court instructed the jury that it could consider the fact that Duford Mitchell possessed a firearm in order to determine whether Duford Mitchell committed the crime of conspiracy as alleged in count one knowingly and intentionally.[8]  But the court also instructed the jury to disregard the portion of the testimony regarding Duford Mitchell's pulling a gun on someone else because it related only to a separate, unalleged crime.

---

[8] Duford Mitchell's challenge is exclusively to the admission of the testimony that he pulled a gun on Johnson; he does not challenge (and we express no opinion on) the court's admission of the evidence of firearm possession (and the related instruction) for the purpose of showing intent on count one.

-20-

Duford Mitchell asserts in conclusory terms that the testimony about pulling a gun on another individual is irrelevant to both the conspiracy and firearms charges, that it was admitted solely to prove his character, and that the probative value of the evidence is substantially outweighed by its prejudice. Assuming arguendo that Mitchell's assertions are correct, any error is harmless. "One of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense." United States v. Anderson, 933 F.2d 1261, 1272 (5th Cir. 1991) (quoting United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc)). But the district court's limiting instruction sufficiently minimized this risk. See, e.g., United States v. Adair, 436 F.3d 520, 527 (5th Cir.), cert. denied, 126 S. Ct. 2306 (2006). Moreover, there was ample evidence of Duford Mitchell's guilt on both counts apart from the disputed testimony.

## V. MOTIONS FOR SEVERANCE AND MISTRIAL

Keyon Mitchell maintains that the district court should have granted his mid-trial motions for severance and mistrial because of testimony that Duford Mitchell assaulted a government witness during the trial. We disagree.

We review the district court's denial of motions for severance and mistrial for abuse of discretion. See United

-21-

States v. Neal, 27 F.3d 1035, 1045 (5th Cir. 1994) (severance); United States v. Mitchell, 166 F.3d 748, 751 (5th Cir. 1999) (mistrial).

Under Rule 14(a) of the Federal Rules of Criminal Procedure, if the joinder of defendants for trial appears to prejudice a defendant, the court may sever the defendants' trials or provide any other relief that justice requires. FED. R. CRIM. P. 14(a). To demonstrate that the court abused its discretion in denying the motion for severance, "the defendant bears the burden of showing specific and compelling prejudice that resulted in an unfair trial, and such prejudice must be of a type against which the trial court was unable to afford protection." Morrow, 177 F.3d at 290 (internal quotation marks omitted) (quoting United States v. Faulkner, 17 F.3d 745, 759 (5th Cir. 1994)). Severance is proper "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

Cornelius Sims, who pleaded guilty to conspiracy in this case, testified for the government. Sims testified, inter alia,

-22-

that after the first day of trial, Duford Mitchell attacked him while they were in a room together at the jail where they were being held during the trial. According to Sims, Duford Mitchell said, "It's just me and you now," called Sims "a snitch," and began repeatedly striking Sims in the head. The government also introduced photographs of Sims after the fight showing a knot on Sims's head. The district court permitted the testimony and admitted the photographs over Keyon Mitchell's objection. After Sims's testimony, the district court instructed the jury that it could consider the testimony regarding the altercation "in connection with the charges that have been brought against Duford Mitchell" but that the jury should "keep the evidence separate as to Duford Mitchell and Keyon Mitchell," as "[t]hat evidence has no bearing on Keyon Mitchell." Several other inmates who witnessed the altercation also testified about it, and the court reminded the jury after their testimony that it could consider the testimony against Duford Mitchell alone and not against Keyon Mitchell.

Keyon Mitchell asserts that Sims was a key witness against him, and he opines that the assault greatly prejudiced him because it bolstered Sims's credibility and caused him to be sympathetic to the jury. He argues that it was error for the trial court to have continued with the joint trial after the assault.

We conclude that Keyon Mitchell has not made the specific

-23-

showing of sufficiently compelling prejudice required to demonstrate an abuse of discretion. The most damaging witnesses against Keyon Mitchell were Jeffrey and Robinson, not Sims. There were numerous other witnesses who testified that Keyon Mitchell sold them crack cocaine. Even if the assault on Sims had prejudiced Keyon Mitchell, the trial court did not abuse its discretion by determining that the prejudice could be adequately minimized by limiting instructions, obviating the need for severance or a new trial.

## VI. FORECLOSED ARGUMENTS

Duford Mitchell also presents other arguments that he concedes have been foreclosed by precedents of this court and of the Supreme Court. He makes these arguments solely to preserve them for further review.

First, he argues that the district court erred by enhancing his United States Sentencing Guidelines offense level based on facts not found by a jury but rather found by a judge by a preponderance of the evidence. This includes an objection to the court's determination of his criminal-history category. As he concedes, the argument is foreclosed by <u>United States v. Mares</u>, 402 F.3d 511, 519 (5th Cir. 2005).

Second, he argues that the district court erred by relying upon hearsay statements in the presentence report without giving him an opportunity to confront the individuals who made the

-24-

statements.  As he concedes, this argument is foreclosed by

United States v. Navarro, 169 F.3d 228, 236 (5th Cir. 1999)

("[T]here is no Confrontation Clause right at sentencing . . . ."

(citing Lindh v. Murphy, 96 F.3d 856, 870 (7th Cir. 1996), rev'd

on other grounds, 521 U.S. 320 (1997))).

## VII. CONCLUSION

For the foregoing reasons, we AFFIRM the defendants'

convictions on count one, we MODIFY the convictions on count two

to reflect convictions for possession of a firearm in furtherance

of attempted possession with intent to distribute more than fifty

grams of crack cocaine, we AFFIRM AS MODIFIED the convictions on

count two, and we AFFIRM the defendants' sentences.