IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2008

Charles R. Fulbruge III
Clerk

No. 05-20590

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOHN HOANG; TINH THANH HOANG;
RONNIE GINNS

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:02-CR-577-15

Before REAVLEY, BENAVIDES, and OWEN, Circuit Judges.

PER CURIAM:[*]

John Hoang, Tinh Thanh Hoang, and Ronnie Ginns were convicted of conspiracy to possess with intent to distribute a controlled substance as a result of their involvement in a large drug trafficking organization in Houston, Texas. The indictment charged that the conspiracy involved 3,4 methylenedioxymethamphetamine (also known as MDMA or Ecstasy); methamphetamine; lysergic acid diethylamide (LSD); cocaine; ketamine; and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

anabolic steroids. The district court sentenced John and Tinh Hoang each to 240 months in prison, and it sentenced Ginns to 188 months. The defendants now appeal, raising numerous issues. We AFFIRM the convictions and the sentences.

All three defendants argue that the district court should have conducted a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), to determine whether the methods used by Government chemists to test for controlled substances were scientifically reliable. The argument is based on the notion that a small number of pills containing MDMA taken from a much larger group of pills and ground up for testing could yield a positive result even if not all of the pills in the larger, untested group contain the drug.

The district court is required by Daubert to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592–93, 113 S. Ct. at 2796. The purpose of the assessment is to ensure reliability, and the inquiry is flexible. United States v. Hicks, 389 F.3d 514, 525 (5th Cir. 2004). The court has wide latitude in making its determination. Id. No separate hearing is necessary.

Here, the experts explained that the Government exhibits were subjected to visual inspection to be sure the pills were all the same. The chemists then obtained random samples from the exhibits and subjected them to color and gas chromatography mass spectrometry testing to determine the presence of controlled substances. "Random sampling is generally accepted as a method of identifying the entire substance whose quantity has been measured." United States v. Fitzgerald, 89 F.3d 218, 223 n.5 (5th Cir. 1996) (rejecting argument that evidence failed to prove possession of over five grams of cocaine base because chemist tested only five of 63 "rocks").

All defendants also challenge the district court's jury charge. They all contend that the district court erroneously gave a Pinkerton[1] charge that allowed the jury to find them guilty of substantive offenses alleged in numerous counts against co-defendants even though they were charged only in a single count of conspiracy. We see no prejudice or reversible error. The district court correctly charged the jury on the requirements for finding the defendants guilty of conspiracy. It instructed the jury to consider each defendant and the evidence separately and to acquit if it did not find the elements of a conspiracy. The portion of the charge concerning a substantive offense was expressly conditioned on the jury first finding beyond a reasonable doubt that the defendants were guilty of the conspiracy charged in count one. Furthermore, the verdict form did not ask the jury to determine guilt or innocence of any substantive counts. Although the Pinkerton instruction should have been omitted, we are not left with substantial and ineradicable doubt that the jury was improperly guided in its deliberations. See United States v. Lucas, 516 F.3d 316, 324 (5th Cir. 2008).

John Hoang challenges the district court's reference in the charge on conspiracy to "a kind of partnership in crime" and a "scheme." Tinh Hoang and Ginns similarly argue that the district court improperly refused requested instructions concerning a common objective and the degree of criminal intent necessary for a guilty verdict. We have carefully reviewed the charge and note that it is virtually identical to the Fifth Circuit Pattern Jury Instructions. A district court does not err by giving a charge that tracks this circuit's pattern instructions and is a correct statement of the law. United States v. Turner, 960 F.2d 461, 464 (5th Cir. 1992). We find no abuse of discretion in the district court's charge or in its refusal of the requested instructions. See United States v. Skelton, 514 F.3d 433, 446 (5th Cir. 2008).

---

[1] Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180 (1946).

Tinh Hoang argues that his Sixth Amendment right to confrontation was violated because the presentence report (PSR) used statements from codefendant John Hoang to apply a role enhancement and to determine the applicable drug quantity. He correctly concedes, however, that we have consistently held, even after United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), that the Sixth Amendment is not violated by the use of hearsay at sentencing. See United States v. Mitchell, 484 F.3d 762, 776 (5th Cir.), cert. denied 128 S. Ct. 297 (2007); United States v. Beydoun, 469 F.3d 102, 108 (5th Cir. 2006).

Tinh next argues that the district court erroneously enhanced his offense level based on two firearms that had been suppressed, and he urges us to follow a Sixth Circuit case to find reversible error. We have previously held, however, that the exclusionary rule does not apply to the district court's consideration of evidence at sentencing. See United States v. Montoya-Ortiz, 7 F.3d 1171, 1181 (5th Cir. 1993). We are bound by our precedent. See United States v. Rodriguez-Jaimes, 481 F.3d 283, 288 (5th Cir. 2007).

Tinh further argues that the district court erroneously enhanced his base offense level for being a manager or supervisor under U.S.S.G. § 3B1.1(b). We review the district court's determination for clear error. United States v. Rose, 449 F.3d 627, 633 (5th Cir. 2006). The role enhancement applies if the defendant was "the organizer, leader, manager, or supervisor of one or more other participants." § 3B1.1, comment. (n.2).

Tinh argues that he was nothing more than an "errand boy" for his brother John. The record shows, however, that John described Tinh as his "main conduit" for distributing MDMA. Tinh leased the apartment from which the brothers distributed drugs and from which Billy Tran obtained the MDMA that he sold to a cooperating source on June 11, 2002. The PSR shows that Tran told federal agents that he dealt MDMA for Tinh, from whom he obtained his supply. Tinh argues that Tran's statements are unreliable because Tran later said that

he was working for John Hoang. The district court essentially made a credibility determination in choosing to believe Tran's statement to the agents about Tinh. See United States v. Shipley, 963 F.2d 56, 59 (5th Cir. 1992) (holding role enhancement was not clearly erroneous where district court made credibility decision to believe co-defendants' statements). Furthermore, it is certainly plausible that Tran was dealing MDMA at the direction of both John and Tinh. For example, there was testimony from Christopher Brown, one of the other drug traffickers in the organization, that co-conspirator Rick Singh said Tinh and John could "move large quantities of pills for us." Brown delivered pills to Tinh for distribution after John made the arrangements. In light of the record as a whole, we conclude that the district court's determination that Tinh was a manager or supervisor was not clearly erroneous.

John and Tinh both make similar arguments challenging the reasonableness of their sentences. They both contend that the 240-months imposed on them was disproportionate to the sentences of other, allegedly more culpable, members of the conspiracy. Because both John's and Tinh's advisory guideline range was higher than the statutory maximum, the statutory maximum became the guideline sentence. The record shows that the district court heard the defendants' arguments, committed no procedural error in its sentencing, and carefully considered the 18 U.S.C. § 3553(a) factors with respect to each defendant before determining that the statutory maximum was appropriate in each instance. With respect to other members of the conspiracy, many of whom pleaded guilty and cooperated with the Government, the district court noted when sentencing John that the circumstances of their plea agreements were not before it and observed that it had to consider the evidence in this particular case. We cannot say that the district court's determination of the sentence was unreasonable. See Gall v. United States, 128 S. Ct. 586,

597–98 (2007); United States v. Cisneros-Gutierrez, 517 F.3d 751, 766–67 (5th Cir. 2008).

John Hoang argues that the district court erroneously denied his fifth motion for a continuance of trial and his motion for a continuance of sentencing until Rick Singh could be extradited to the United States from India. John's argument that Singh might have supplied helpful testimony is purely speculative. He makes no showing that the witness would have been willing to testify in his behalf and would have presented substantial favorable evidence. The district court did not abuse its discretion in denying the motions for continuance. See United States v. Hickerson, 489 F.3d 742, 745 (5th Cir. 2007).

John further argues that there was a material variance between the indictment, which alleged a single conspiracy to distribute six different controlled substances, and the proof at trial, which he contends showed multiple smaller conspiracies. We need not resolve whether there was a variance because it is clear from a review of the evidence that the Government proved John was involved in a conspiracy to distribute MDMA. See Mitchell, 484 F.3d at 770 ("Even where the evidence points to multiple conspiracies rather than the single conspiracy charged in the indictment, the variance does not affect the defendant's substantial rights as long as the government establishes the defendant's involvement in at least one of the proved conspiracies."). John presents only a conclusory argument under the general principles of joinder and severance, and he fails to show reversible error. See id. at 771. Furthermore, any risk of prejudice was minimized by the district court's jury charge. See id.

John next asserts that the district court improperly limited his cross-examination of chemist David Love as to Love's methods for testing samples of MDMA. However, John's cross-examination of the first Government chemist extensively explored the testing methodology. All the chemists testified to using the same methodology and testing procedures, and John presented enough

information to the jury about the testing protocol to make his point. We find no abuse of discretion by the district court. See United States v. Jimenez, 464 F.3d 555, 558–59 (5th Cir. 2006).

Ronnie Ginns argues that the district court violated his confrontation rights by limiting his cross-examination of two witnesses. He contends that the court erroneously prevented him from (a) asking Daniel Yonker whether Yonker's plea agreement provided for the dismissal of charges with mandatory minimum sentences and (b) asking Minda Harris whether she solicited money from other defendants not to testify against them. The record shows that although the district court prevented Ginns from asking Yonker about his sentencing exposure, the court permitted extensive questioning about the existence of Yonker's plea agreement and the pending criminal charges. The jury had sufficient information to consider any bias and motives by Yonker, and there was no violation of Ginns' right to confrontation. See United States v. Cooks, 52 F.3d 101, 104 (5th Cir. 1995).

Whether Harris was willing to change her testimony for compensation was arguably relevant to her motives and bias. Nevertheless, we conclude that any error was harmless in light of the limited information Harris provided about Ginns and the substantial evidence provided by other witnesses. Harris essentially provided minimal information that Ginns socialized with Rick Singh and was seen with Singh at her apartment, that Ginns was unemployed, and that Singh frequently gave Ginns money. On redirect examination, Harris testified that she saw Singh give Ginns Ecstasy "a few times at the club." Other witnesses were much more important in linking Ginns to illicit drug activity. For example, Yonker testified that Singh gave a kilogram of cocaine to Ginns to sell and that Ginns supplied cocaine to him at Singh's club, where Ginns kept on his person numerous packages of cocaine in personal use amounts. Gal Kofferberg also testified that he purchased cocaine from Ginns for his personal

use. Yonker and Richard Boyd both testified that Ginns and another man physically beat Boyd for stealing a quantity of Singh's cocaine. David Chavez testified that he delivered pills to Ginns for distribution, and he identified a ledger entry showing a delivery. Tony Hutson also testified that Ginns supplied him with MDMA that had been "fronted" by Singh. In light of the record as a whole, we are not convinced that the limitation on the questioning of Harris contributed to the verdict, and Ginns fails to show reversible error. See Jimenez, 464 F.3d at 564; Cooks, 52 F.3d at 104.

Ginns further argues that his confrontation rights were violated under Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968), when a DEA agent testified about John Hoang's statement identifying Ginns in a photo spread. The district court granted Ginns' motion to strike the testimony and gave a limiting instruction to the jury, but it denied Ginns' motion for a mistrial. We find no reversible error. As noted above, there was ample evidence of Ginns' guilt, and we conclude that the error, if any, was harmless. See United States v. Gutierrez-Chavez, 842 F.2d 77, 80 (5th Cir. 1988) ("[E]ven if a statement is admitted in violation of the Bruton principle, the error may be harmless if the statement's impact is insignificant in light of the weight of other evidence against the defendant." (quotation and citation omitted)).

Finally, Ginns argues that the district court erroneously denied his motion for a mistrial after impermissibly admitting evidence of an unrelated offense. The evidence came in the form of a recorded telephone conversation wherein Rick Singh purportedly discussed with Ginns a gun and a ski mask used to commit a robbery. We conclude that the evidence appeared in passing during the course of a lengthy trial that included more than sufficient evidence of Ginns' guilt. Any error was, at most, harmless. See United States v. Sotelo, 97 F.3d 782, 798 (5th Cir. 1996).

AFFIRMED.