IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-60219

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

BILLY RAY SHOWS, II; BILLY RAY SHOWS

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 4:05-CR-28-2

Before SMITH and SOUTHWICK, Circuit Judges, and ENGELHARDT, District Judge.[*]

PER CURIAM:[**]

Defendants Billy Ray Shows ("Dr. Shows") and Billy Ray Shows, II ("Shows II") appeal their criminal tax convictions. Both appellants argue that the evidence was insufficient to support their convictions. In addition, Dr. Shows maintains that the district court erred in allowing the introduction of evidence from tax years preceding and following the years charged in the

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

indictment, permitting a variance between the charges in the indictment and the proof offered at trial, and preventing him from introducing evidence in support of his theory of defense. We find no reversible error and AFFIRM.

## I. BACKGROUND

For the majority of the time period at issue in this case, Dr. Shows worked as a private practitioner and contract emergency room doctor in Newton, Mississippi. Dr. Shows ran his private practice out of a building known as "Shows Medical Clinic," which he built and originally owned. Eventually, Dr. Shows transferred the property to his daughter, who transferred it to his wife. Dr. Shows's wife then transferred the building to Shows II, who was in the real estate business, and Shows II leased the clinic to Dr. Shows for $6,000 per month.

In 1997, the Mississippi State Board of Medical Licensure suspended Dr. Shows's medical license for two consecutive, six-month periods during which he was not permitted to prescribe certain medications or operate his private practice. Additionally, in 1998, Medicare audited its payments and determined that it had overpaid Dr. Shows by approximately $42,000. Medicare accordingly suspended payments for Dr. Shows's services in order to recover the overpayment. During this period of professional and financial difficulty, Dr. Shows fell behind on both his rent and federal income tax payments.

Except for minor withholdings, Dr. Shows has not paid any income tax since 1996.[1] Furthermore, he did not file tax returns for 1997-2001 until January 2004, and his 2002-2006 tax returns were also late. The IRS began investigating Dr. Shows in March 2002. IRS agents met with Dr. Shows as a part of their investigation. They obtained a copy of his books and records. Dr. Shows maintains that he informed the investigators that he wanted to catch up

---

[1] This reflects Dr. Shows's tax status as of the trial date in this matter.

on his past-due taxes and that it was his understanding that after he gave the agents his records, they would make findings regarding his income and allowable expenses, from which he could file and pay his taxes. The IRS agents allege that there was no such understanding.

In August 2005, a federal grand jury returned a four-count indictment against Dr. Shows and Shows II. Both were charged with one count of conspiracy to obstruct or defeat the payment of taxes in violation of 18 U.S.C. § 371. Dr. Shows was further charged with three counts of attempted tax evasion in violation of 26 U.S.C. § 7201, one count for each year from 1999-2001. Both defendants pled not guilty and were tried by a jury in December 2007. The jury found the defendants guilty on all counts. After the district court entered a judgment on the jury's verdict, both defendants timely appealed.

## II. DISCUSSION

### A.    Sufficiency of the Evidence

We review the district court's denial of a properly preserved motion for a judgment of acquittal de novo. United States v. Mitchell, 484 F.3d 762, 768 (5th Cir. 2007) (citations omitted). "Our review of the sufficiency of the evidence following a conviction is narrow. We will affirm if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." United States v. Westbrook, 119 F.3d 1176, 1189 (5th Cir. 1997) (citations omitted). Moreover, we view the evidence, reasonable inferences drawn therefrom, and credibility determinations in the light most favorable to the verdict. Id. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." Mitchell, 484 F.3d at 768. Furthermore, the court need not change its standard of review if the evidence supporting the conviction is circumstantial rather than direct. Id.

For a conspiracy conviction under 18 U.S.C. § 371, "the government must prove beyond a reasonable doubt that two or more people agreed to pursue an unlawful objective together, that the defendant voluntarily agreed to join the conspiracy, and that one of the members of the conspiracy performed an overt act to further the conspiracy." United States v. Faulkner, 17 F.3d 745, 768 (5th Cir. 1994) (citation omitted). Circumstantial evidence may be used to establish each of these elements. Id. "To support a conviction for attempted tax evasion [under 26 U.S.C. § 7201], . . . the government must prove beyond a reasonable doubt that there was a tax deficiency, an affirmative act constituting an attempt to evade or defeat the tax, and willfulness." United States v. Bishop, 264 F.3d 535, 550 (5th Cir. 2001) (citing Sansone v. United States, 380 U.S. 343, 351 (1965)).

Defendants argue that the government did not produce sufficient evidence to establish the overt or affirmative act requirements of the conspiracy and attempted tax evasion charges, and Dr. Shows further alleges that the government did not prove the willfulness element of the attempted tax evasion charges. The government maintains, however, that it introduced evidence from which the jury could conclude that because the lease transaction between Dr. Shows and Shows II had no economic reality, it constituted an overt act in furtherance of the defendants' tax evasion conspiracy and attempted tax evasion. The government's theory is that Shows Medical Clinic was transferred to Shows II so that Dr. Shows could divert and conceal a portion of his taxable income as rental expense deductions, and Shows II could then return the diverted rent payments to Dr. Shows for his personal use.

Under the sham transaction doctrine, tax deductions are not permitted if they result from a transaction with no economic substance other than to create favorable tax consequences. See United States v. Wexler, 31 F.3d 117, 122 (3d Cir. 1994). Also relevant is the step transaction doctrine, which provides that

"the tax consequences of an interrelated series of transactions are not to be determined by viewing each of them in isolation but by considering them together as component parts of an overall plan." Sec. Indus. Ins. Co. v. United States, 702 F.2d 1234, 1244 (5th Cir. 1983) (internal quotation marks and citation omitted).

We conclude that the government presented sufficient evidence for a jury to find that the lease transaction was a sham that constituted an overt or affirmative act in furtherance of the defendants' conspiracy to divert and reduce Dr. Shows's taxable income and Dr. Shows's attempts to evade the payment of taxes. The government introduced evidence that Dr. Shows built and originally owned Shows Medical Clinic; that through a series of transactions, Dr. Shows transferred the building to Shows II for little or no consideration; that on the same day Shows II obtained the property, he leased the space to Dr. Shows; that Dr. Shows did not consistently pay the agreed rent for the property; and that Shows II made several monetary gifts to Dr. Shows on the same days Dr. Shows paid his rent.[2] This evidence, combined with the proof that Dr. Shows failed to timely file and pay taxes in the years before and after those charged in the indictment, also provided sufficient grounds upon which a jury could find that Dr. Shows acted willfully.

There was sufficient evidence to support the defendants' convictions.

B.    Rule 404(b) Evidence

A district court's decision to admit evidence of other crimes or acts in a criminal case is reviewed under a heightened abuse-of-discretion standard. Mitchell, 484 F.3d at 774. Even if error in admission occurred, we examine whether any harm resulted from the admission. Id.

---

[2] As part of its overt or affirmative act evidence, the government argued that Shows II returned Dr. Shows's rental payments to him through these monetary gifts; however, the proof at trial established that the monetary gifts added up to only a small percentage of the overall amount Dr. Shows claimed in rental expenses.

Under Rule 404(b) of the Federal Rules of Evidence,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

To be admissible, the rule requires the evidence to be relevant to an issue other than the defendant's character. Even if it is, the probative value must not be substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Dr. Shows argues that the district court erred in allowing the government to introduce his tax records from years preceding and following the years charged in the indictment. The district court admitted the tax returns and IRS notices for the uncharged years as evidence of Dr. Shows's knowledge of his tax obligations and his willful intent to avoid such obligations; it also was evidence that negated any argument that Dr. Shows had a good-faith belief that he was not obligated to file tax returns or pay taxes. See United States v. Wisenbaker, 14 F.3d 1022, 1028 (5th Cir. 1994) (defendant's prior state convictions for failure to pay taxes properly admitted because such convictions were relevant to the element of willfulness and tended to negate the defendant's good-faith defense that he believed he was not obligated to pay the taxes); United States v. Pry, 625 F.2d 689, 692 (5th Cir. 1980) (defendant's prior failure to send quarterly tax returns to the IRS was relevant as evidence of the defendant's knowledge and intent); see also United States v. Farber, 630 F.2d 569, 571-72 (8th Cir. 1980) (tax documents for years subsequent to that charged in the indictment properly admitted because "subsequent tax paying conduct is relevant to the issue of intent or willfulness in a prior year").

In addition, the prejudicial effect of the tax returns and notices did not substantially outweigh their probative value. We have described the probative value of the evidence. Dr. Shows has not shown any significant prejudice. He points to the fact that jurors during their deliberations asked about the IRS notices for the 1996 tax year, which was prior to the period covered by the charges. But jurors merely asked if they could consider the notices as evidence on state of mind, which was the non-character purpose for which the notices were admitted. Moreover, Dr. Shows admits that the court handled the question properly. Any possible prejudice from the evidence was mitigated by the court's instruction that jurors should not convict a defendant for willful evasion of taxes based on a mere failure to file.

The district court properly admitted the documents from the uncharged years as Rule 404(b) evidence of Dr. Shows's knowledge and intent.

## C.    Variance Between the Indictment and Proof

"A variance arises when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense." United States v. Delgado, 401 F.3d 290, 295 (5th Cir. 2005) (citations omitted). To determine whether a variance occurred, the court compares the evidence presented at trial with the actual language of the indictment. Mitchell, 484 F.3d at 769. If the court finds that a variance occurred, reversal is only required "if the variance prejudiced the defendant's substantial rights." Id. (citations omitted). "As long as the defendant receives notice and is not subject to the risk of double jeopardy, his substantial rights are not affected." United States v. Freeman, 434 F.3d 369, 375 (5th Cir. 2005) (internal quotation marks and citation omitted).

Dr. Shows makes two arguments concerning variances. First, he maintains that although the indictment charged him with felony tax evasion under 26 U.S.C. § 7201, the proof offered at trial established only a misdemeanor

failure to file tax returns or to pay taxes under 26 U.S.C. § 7203. A person may not be convicted of felony tax evasion based solely on his willful failure to file or pay taxes. Dr. Shows contends that the government did not introduce evidence that he did anything but fail to file and pay. Second, Dr. Shows alleges that although the indictment stated that he has not filed any tax returns since 1996, the government offered his tax returns from 1996 to 2006 into evidence at trial.

Dr. Shows has not shown a fatal variance. Dr. Shows's initial variance claim is essentially an extension of his argument as to the sufficiency of the evidence. The government proceeded under a felony tax evasion theory at trial, and the jury was properly instructed as to the elements of felony tax evasion under 26 U.S.C. § 7201. Whether the proof at trial established the essential elements of the felony charges goes to the sufficiency of the evidence. As we already discussed, the evidence was sufficient to support the convictions.

Dr. Shows's second complaint does reveal an actual variance. Though the indictment charged that he had not filed certain returns, Counts 2-3 of the indictment clarified the misstatement and explained that for each of the material years, Dr. Shows did not timely file a tax return. Furthermore, Dr. Shows has not shown that the variance impaired his ability to prepare a defense or subjected him to the risk of double jeopardy. The error did not affect Dr. Shows's substantial rights, and reversal is not justified.

D.    Theory of Defense Evidence

"A district court's evidentiary rulings are reviewed for abuse of discretion," and an error in excluding evidence does not necessitate reversal unless it affected the defendant's substantial rights. United States v. Lowery, 135 F.3d 957, 959 (5th Cir. 1998) (citation omitted).

Dr. Shows maintains that the district court erred in granting the government's motion in limine to exclude evidence of Dr. Shows's voluntary disclosure to the IRS. Dr. Shows admits that the district court excluded the

evidence because voluntary disclosure is not an available defense to a criminal investigation started before the disclosure. He asserts, however, that he was not offering the voluntary disclosure evidence as an affirmative defense; rather, he sought to use the evidence to discredit the government's proof of willfulness. Dr. Shows maintains that the court's bar on voluntary disclosure evidence prevented him from presenting his theory that his accountant had worked out a deal with the IRS under which he could avoid criminal charges by filing and paying his taxes based on the IRS's computations.

The central problem with this argument is that the district court did not prevent Dr. Shows from presenting his theory of defense. The court permitted an accountant to testify that he gave Dr. Shows's records to the IRS with the understanding that the IRS would review the records, make findings, and then allow Dr. Shows to prepare tax returns based on the IRS's computations. Moreover, Dr. Shows was allowed to question the IRS agent about the alleged deal. Dr. Shows himself testified that he had an understanding with the IRS agents that after reviewing his records, they would return to discuss the taxes. Finally, the deal was discussed in Dr. Shows's closing statement, and the jury charge included an instruction on the good faith defense.

We find Dr. Shows was permitted to present his theory of defense, and there was no abuse of discretion when the district court granted the government's motion in limine with respect to voluntary disclosure.

The district court's judgment is AFFIRMED.