# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-20458

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

DEANDREA S WADE; ERIC AMOAKO

Defendants - Appellants

_____
Consolidated w/
Case No. 08-20508

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

DIANNE WINZER

Defendant - Appellant

Appeals from the United States District Court for the
Southern District of Texas, Houston
4:07-CR-00351-4

## ON PETITION FOR REHEARING

Before BENAVIDES, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

IT IS ORDERED that the petitions for rehearing filed by each appellant are DENIED and the following opinion is substituted for our opinion filed November 11, 2009.

Defendant-Appellants: Eric Amoako, Dianne Winzer, and Deandrea Wade, were indicted in the district court for conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 371 and 1341 (Count I); conspiracy to launder funds, in violation of 18 U.S.C. § 1956(h) (Count II); and several individual counts of mail fraud in violation of 18 U.S.C. §§ 2 and 1341 (Counts III-XX). The jury returned a guilty verdict on all counts as to Amoako and Winzer, but only convicted Wade on Counts I, II, XVI, and XVII (charging conspiracy to commit mail fraud, conspiracy to commit money laundering, and two individual counts of mail fraud). On appeal, all three appellants argue both that the district court erred in excluding the testimony of two mental health experts, and that the indictment was defective for failure to sufficiently allege the *mens rea* of the offense charged in Count II. Additionally, Wade appeals the district court's denial of her Rule 29 motion, arguing that the evidence was insufficient to sustain her convictions on Counts I, II, XVI, and XVII.

## I.

The gravamen of the Government's case against the three co-defendants consisted of testimony given by two of the defendants' co-conspirators, Theresa Williams and Sandra Johnson. Prior to January, 2006, Theresa Williams owned accident injury clinics in Houston, Texas, and Sandra Johnson was an adjuster in the Houston Workers' Compensation Claim Center of the Hartford Insurance Company (Hartford). In January,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2006, Johnson began issuing checks from Hartford to Williams's clinics in Houston—for services not actually rendered. Initially, Johnson and Williams split these proceeds in half, equally amongst the two women. Later, when the two incorporated other co-conspirators into their scheme, they decided they would split the fraudulently issued checks three ways between Johnson, Williams, and whichever co-conspirator owned the address purported to be a "clinic." In total, Johnson caused 188 checks to be issued by Hartford from January, 2006, to June, 2006, to fake clinics—amounting to approximately $1,717,000.00.

During the trial, Williams testified that prior to the conception of the charged conspiracy, the first named appellant, Amoako, had been her "boyfriend, [her] business partner, [and her] best friend." Amoako was a personal injury lawyer, and Williams and Amoako had previously arranged a business agreement by which Williams would send Amoako patients from her clinic and Amoako would send his injured clients to Williams' clinic. At trial, Johnson testified that she first approached Amoako about joining their money laundering/mail fraud conspiracy.

According to Johnson's testimony, Amoako and Johnson agreed that Johnson would send checks payable to Gulfway Medical and Rehab Center, a Port Arthur clinic that Amoako owned. Thus, the two agreed that Johnson and Williams would each get a percentage of the Hartford insurance money that Johnson caused to be sent to Amoako's defunct clinic. Amoako disputes the credibility of Johnson's and Williams' testimonies, and instead, contends he was oblivious to the fraud and thought Johnson and Williams were billing for services actually rendered.

Williams also testified that Winzer, the second appellant in the instant appeal, had been her friend for "maybe eighteen years." Winzer had been Williams' accountant, handling her taxes, as well as her personal and

3

business accounting. In 2004, Williams sold an accident and injury clinic she owned, known as "Amigos," to Winzer. Deandrea Wade (the third appellant in this case and Winzer's daughter) worked as the office manager of the clinic. Williams testified that Winzer also owns Brighter Days, a tax business and a daycare all in the same building, in Houston, Texas. Additionally, Winzer is claimed to own a clinic called Total Rehab of Monroe, also known as Winzer Total Rehab, located in Monroe, Louisiana.

After discussing the idea with Williams, Johnson invited Winzer to join the money laundering/mail fraud scheme. Johnson and Winzer agreed that Johnson would cause Hartford to send fraudulent checks to Winzer's clinics and that Winzer would then distribute one-third of the proceeds to Williams and one-third to Johnson. Winzer disputes Williams' and Johnson's version of events–contending instead that she was duped and controlled by Williams during the entirety of their business dealings.

During the trial, Johnson offered testimony regarding a meeting that took place between Winzer, Williams, and herself, during which Winzer distributed the allotted funds from the first fraudulent check Winzer's Brighter Days clinic received from Hartford. Johnson stated that Wade was present at that meeting. According to Johnson, Wade asked how she could "get in on it." Johnson and Williams then explained to Wade "how the process was going to work . . . [Johnson] would issue the checks and once she got them, then [Wade] would pay [Johnson], and that the checks would be made out to C. Johnson Claims Service." Subsequent to that meeting, Johnson caused checks to be sent from Hartford to Total Rehab of Monroe, P.O. Box 4941, in Monroe, Louisiana. The application for this post office box was filled out and signed in the name of Deandrea Wade, 6422 Mosswood Drive. Wade avers that although she did accept the checks from Hartford on behalf of her

mother's clinics, she was merely performing her job as the Amigos office manager and was oblivious to the fact that the checks were fraudulent.

Eric Amoako, Theresa Williams, Dianne Winzer, and Deandrea Wade all proceeded to trial in the district court on January 22, 2008. Johnson, however, entered a plea of guilty as to the government's charges against her for conspiracy and mail fraud. Johnson testified at trial that her plea agreement with the government included a cooperation agreement, by which she would be eligible for a reduced sentence in exchange for her truthful testimony regarding the conspiracy she entered into with her co-defendants.

On the morning of the sixth day of trial, Amoako's counsel informed the court that he had "a few miscellaneous type witnesses," and that he would like to "put them on." He then proceeded to call to the stand Deborah Drake, a witness that counsel had failed to disclose in compliance with the district court's previously issued Scheduling Order. Drake is a clinical social worker and a marriage and family therapist who testified that Johnson was her client. Upon hearing this testimony, the district court promptly called for a recess, excused Drake, and asked counsel to state the relevance of Drake's testimony. Amoako's counsel informed the court that he wished to use Drake's testimony to establish that Johnson "is crazy as a bedbug." Outside the presence of the jury, Drake informed the district court she had seen Johnson on four occasions: November 9, November 17, December 1, and December 15, 2007. Drake stated she had diagnosed Johnson with severe major depression and severe generalized anxiety.

The district court ruled it would not allow Drake to "testify based on several reasons." The district court then barred Drake's testimony under both Fed. R. Evid. 403 and Fed. R. Crim. P. 16. First, under Fed. R. Evid. 403, the district court found that the proffered testimony was not "sufficiently probative" to outweigh its prejudicial effects. The district court concluded

that because Johnson herself had testified she was depressed, Drake's testimony would only serve to "confuse the jury" and waste time. Additionally, the district court found that Amoako's counsel had failed to follow the proper procedures for providing notice in accordance with the Court's Scheduling Order, issued pursuant to Fed. R. Crim. P. 16. Consequently, neither the district court, nor the Government, would have the "ability to check [the] reliability" of the proffered expert testimony prior to its admission. In consideration of all the aforementioned reasons, the district court barred Drake's testimony.

Amoako's counsel then proffered another expert witness, Dr. Zhao, Williams' psychiatrist who would testify as to "Williams' diagnosis when she was hospitalized in early 2007." In response to Dr. Zhao's proffered testimony, the district court noted that Williams herself had already provided testimony regarding her suicide attempt, hospitalization, and the hallucinations of her dead son she experienced while she was hospitalized. Amoako's counsel stated that he was not trying to prove any "prior inconsistent statements or contradiction," but rather, counsel only wished to offer "additional proof to substantiate [his] theory that [Williams is] crazy." The district court ruled that while counsel could certainly argue this theory, Dr. Zhao's testimony would only be cumulative and, thus, "there was no need for any extrinsic evidence on this subject." As a result, the district court barred Dr. Zhao's testimony.

We affirm for the reasons set forth below.

## II.

### A.     The district court did not err when it excluded the mental health expert testimony under Rule 403

This Court reviews "challenges to the admission of evidence at trial . . . for an abuse of discretion, 'subject to harmless error analysis.'" *United States*

*v. Stephens*, 571 F.3d 401, 409 (5th Cir. 2009) (quoting *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008)).[1] "If the court errs in its evidentiary ruling, the error can be excused if it was harmless." *United States. v. Hart*, 295 F.3d 451, 454 (5th Cir. 2002) (internal quotations omitted). "Reversible error occurs only when the admission of evidence substantially affects the rights of a party." *Crawley*, 533 F.3d at 353. In this case, we do not reach the consideration of whether the defendant-appellants' substantial rights were affected since we find that the trial court's exclusion of the evidence pursuant to Fed. R. Evid. 403 does not constitute error.[2]

Relevant evidence "is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by [the Federal Rules of

---

[1] Although the defendant-appellants did not renew their objection to the exclusion of the evidence, their objection has nevertheless been properly preserved for appeal. "To preserve error in an evidentiary ruling excluding evidence under Rule 103(a), a defendant must make an 'offer of proof' of evidence, meaning that 'the substance of the evidence' must have been 'made known to the court by offer' or must have been 'apparent from the context within which questions were asked.'" *United States v. Kay*, 513 F.3d 432, 455 (5th Cir. 2007) (quoting Fed. R. Evid. 103). In the present case, the defendant-appellants need not have renewed their objection to the exclusion of the evidence in order to preserve their objection for appeal. *See id.* at 456 ("By explaining to the court the substance of the proffered evidence . . . and why the court should admit [the testimony,] . . . Defendants made a sufficient 'informal' offer of proof.") (internal citations and quotations omitted). Thus, "[a]lthough Defendants did not renew their attempt to admit the evidence in trial after the court's decision to exclude . . . [n]o further objections by Defendants were necessary" to preserve their objections on appeal. *Id.*

[2] It appears from the record that the district court relied on Fed. R. Crim. P. 16 as an additional basis for excluding the two mental health experts' testimonies. We note that the district court did not refer to Fed. R. Crim. P. 16 explicitly when making its evidentiary ruling. However, it could be easily inferred from the record that the district court's reference to the fact that "the procedures ha[d] not been followed with respect to Mr. Amoako giving disclosure of the expert . . . in a timely fashion"–demonstrates that Rule 16 may have been a basis for the district court's exclusion of the expert's testimony, as the expert witness's testimony had not been disclosed in full compliance with the district court's Scheduling Order. This Court has previously held "that the compulsory process clause of the sixth amendment forbids the exclusion of otherwise admissible evidence solely as a sanction to enforce discovery rules or orders against criminal defendants." *United States v. Davis*, 639 F.2d 239, 243 (5th Cir. 1981). Thus, to the extent that the district court did rely on Rule 16, such reliance was in error. Because the district court's exclusion of the evidence can be affirmed on other grounds, however, any such error would be harmless.

Evidence], or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed. R. Evid. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In reviewing the district court's decision to exclude the expert witnesses' testimony, this Court must remain "mindful that a defendant has 'the right to attempt to challenge [a witness's] credibility with competent or relevant evidence of any mental defect or treatment at a time probatively related to the time period about which [that witness] was attempting to testify.'" *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001) (quoting *United States v. Partin*, 493 F.2d 750, 763 (5th Cir. 1974)).

This right, however, is not limitless. This Court has previously held that evidence regarding a witness's mental health is relevant for impeachment purposes if that evidence speaks to whether the witness has "the ability to comprehend, know, and correctly relate the truth." *Partin*, 493 F.2d at 762.

In the present case, the record shows that at the time defense counsel proffered the two mental health experts' testimonies, defense counsel failed to establish their relevance. That is, defense counsel failed to establish that these two experts could speak to whether Johnson or Williams suffered from mental impairments such that they did not have "the ability to comprehend, know, and correctly relate the truth." *Id.* Instead, defense counsel merely informed the district court that he intended to use Drake's testimony to establish that Johnson was "crazy as a bedbug."[3] When defense counsel

---

[3] In evaluating whether to exclude the evidence, the district court first inquired as to "what the relevance is" of Drake's testimony. When counsel answered that the relevance was

proffered Dr. Zhao's testimony, he stated that he was not trying to prove any "prior inconsistent statements or contradiction," but rather, counsel only wished to offer "additional proof to substantiate [his] theory that [Williams is] crazy."

The fact that a mental health expert can state that a witness is "crazy" does not render that expert testimony relevant for evidentiary purposes.[4] Consequently, the district court did not abuse its discretion when it found the probative value of the mental health evidence was outweighed by its prejudicial effect pursuant to Rule 403–since the evidence, as it was proffered, was entirely lacking in relevance.

The appellants also aver that the district court mis-stated Rule 403's legal standard. In excluding Drake's testimony, the district court reasoned that Drake's testimony was "not sufficiently probative to outweigh . . . the prejudicial value of unfair confusion and waste of time." According to the

---

simply to establish that Johnson was "crazy as a bedbug," *i.e.*, that Johnson had been diagnosed with both depression and anxiety, the district court reasoned that "the diagnosis of major depression is–and general anxiety are [not] . . . new news to this jury. There's no indication that . . . this testimony is sufficiently probative to outweigh what I think the other negatives are. . . [I]t will confuse the jury." Likewise, when counsel informed the district court that he wished to introduce Dr. Zhao to establish that Williams experienced hallucinations during her hospitalization, the district court stated that "the witness has not been contradicted on this subject so there's no need for any extrinsic evidence on this subject."

[4] In reaching this conclusion, we note that we are not concluding that Drake and Dr. Zhao's testimonies were definitively irrelevant, but rather, we conclude that the district court was not presented with the proper proffer by which it could verify their relevance. Had defense counsel indicated to the district court that counsel intended for Drake and Dr. Zhao to testify as to Johnson's and Williams's "ability to comprehend, know, and correctly relate the truth." *Partin*, 493 F.2d at 762, our analysis here would be quite different. Instead, the district court was only offered two mental health experts who would establish that two witnesses were "crazy." While defense counsel attempted to bolster the original proffer during oral argument by offering new evidence regarding what the experts could have testified to during the trial, as the reviewing Court, we can only consider "the substance of the evidence [as it] was made known to the [district] court by [defense counsel's] offer." Fed. R. Evid. 103(a)(2). Defense counsel's proffer at trial to establish that Johnson and Williams are "crazy" simply does not suffice.

appellants, this is a mis-characterization of Rule 403's standard because it appears as though the district court is excluding all evidence unless the probative value of the evidence sufficiently outweighs any potential prejudice–in place of evaluating whether the potential prejudice outweighs the probative value of the evidence. The appellants argue that the district court's application of Rule 403 in this manner would erroneously support the exclusion of any evidence where the probative value was equivalent to the potential prejudicial effect. *See United States v. Davis*, 639 F.2d 239, 244 (5th Cir. 1981) ("The phrasing of Rule 403 makes it clear that the discretion to exclude does not arise when the balance between the probative worth and the countervailing factors is debatable."). Thus, the appellants maintain that because Rule 403 states that relevant evidence may be excluded only "if its probative value is substantially outweighed" by any prejudice, the district court's statement and seeming reliance upon the contrapositive to Rule 403's plain language constitutes reversible error.

This argument is not persuasive. Although this Court has previously recognized that the district court has no discretion to dismiss evidence pursuant to Rule 403 when "the balance between the probative worth and the countervailing factors is debatable," *Davis*, 639 F.2d at 244, this debate is not present in the record before us now. While the district court's restatement of Rule 403's language could be misread to indicate erroneous reasoning, when considered in the full context of the district court's findings, it is clear that the district court properly evaluated the proffered evidence in full accordance with Rule 403's legal standards. The record supports the district court's determination that Drake's testimony regarding Johnson's mental health lacked probative value, and therefore, was not relevant to the issues at hand. Furthermore, the record supports the district court's finding that Dr. Zhao's

testimony regarding Williams' hallucinations while she was hospitalized was only cumulative, and therefore under Rule 403, properly excluded.

For the aforementioned reasons, we affirm the district court's exclusion of the evidence of both mental health experts pursuant to Rule 403.

### B.   The indictment sufficiently alleged the *mens rea* element of the offense charged in Count II

The appellants also aver that the indictment is fundamentally defective because the Government did not allege the correct *mens rea* element for the offense charged in Count II. "We review de novo a challenge to the sufficiency of an indictment." *United States v. Threadgill*, 172 F.3d 357, 366 (5th Cir. 1999) (citation omitted). "Generally, we measure the sufficiency of an indictment by whether (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, without any uncertainty or ambiguity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *Id.* (internal quotations omitted).

Count II of the indictment charges the three appellants with conspiracy to launder funds under 18 U.S.C. § 1956(h). Section 1956(h) states: "Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Thus, Count II charges the appellants with conspiring to commit the offenses referenced in § 1956(a)(1)(A)(i) and (B)(i). On appeal, the three appellants now argue that the indictment is defective because Count II does not allege the specific intent necessary to charge an individual with having committed the actual offense of money laundering outlined in § (a)(1)(A)(i). The appellants attempt to bolster their argument by highlighting the fact that § (a)(1)(A)(i) states the *mens rea* as "with the intent to promote," and Count II of the indictment does not

11

mention the word "intent," but rather, speaks to the appellants' actions as "knowingly combine, conspire, confederate, and agree with others" to commit the listed offenses. According to the appellants, the indictment is thus defective for erroneously substituting the *mens rea* "knowingly" for § (a)(1)(A)(i)'s "with intent." The appellants' argument, however, is misplaced.

"The defendants' argument is unavailing because the . . . elemen[t] the defendants claim [is] missing from count two [is] not even [an] elemen[t] of the crime of conspiracy." *Threadgill*, 172 F.3d at 367 (citing 18 U.S.C. § 1956(h)). Conspiracy is the offense charged under § 1956(h)–not money laundering. As this Court has previously stated, "[c]onspiracy incorporates willfulness and specific intent. . . [I]ntent to accomplish an object cannot be alleged more clearly than by stating that parties conspired to accomplish it." *United States v. Purvis*, 580 F.2d 853, 859 (5th Cir. 1978) (internal citations and quotations omitted). In an indictment that charges a defendant with conspiracy to commit a crime, the formality of listing the specific intent of the conspiracy's underlying crime "is unnecessary where the statute itself contains no such terms and the indictment clearly sets forth a charge of specific intent in the factual averment." *Id*. "Thus, we have consistently held that a conspiracy charge need not include the elements of the substantive offense the defendant may have conspired to commit." *Threadgill*, 172 F.3d at 367 (citing *United States v. Fuller*, 974 F.2d 1474, 1479-80 (5th Cir. 1992); *United States v. Graves*, 669 F.2d 964, 968 (5th Cir.1982)).

For the aforementioned reasons, Count II of the charging indictment is not defective, and consequently, the appellants' appeal in this regard is without merit.

### C.   The district court did not err in denying appellant Wade's Motion for Judgment of Acquittal on Counts I, II, XVI, and XVII

Because Wade "preserved h[er] challenge to the sufficiency of the evidence, we review *de novo* the district court's denial of h[er] Rule 29 motion for a judgment of acquittal." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007). Regarding the sufficiency of the evidence sustaining her convictions, we review her appeal "under the well established standard that the Court view the evidence, whether direct or circumstantial, and all the inferences reasonably drawn from it, in the light most favorable to the verdict." *United States v. Salazar*, 958 F.2d 1285, 1290-91 (5th Cir. 1992). "The ultimate test for sufficiency of the evidence challenges is whether a reasonable jury could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* at 1291. "Such standard of review is the same regardless of whether the evidence is direct or circumstantial." *United States v. Wise*, 221 F.3d 140, 147 (5th Cir. 2000). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Mitchell*, 484 F.3d at 768. "Furthermore, our inquiry is limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *United States v. Ollison*, 555 F.3d 152, 160 (5th Cir. 2009).

A conviction for conspiracy under 18 U.S.C. § 371 (Count I of Wade's indictment) "requires the Government to prove beyond a reasonable doubt (1) an agreement between two or more persons, (2) to commit a crime against the United States, and (3) an overt act in furtherance of the agreement committed by one of the conspirators." *United States v. Krenning*, 93 F.3d 1257, 1262 (5th Cir. 1996). "To sustain a conviction for conspiracy to launder

money under § 1956(h) [Count II], the Government must prove beyond a reasonable doubt that: (1) there was an agreement between two or more persons to launder money; (2) the defendant voluntarily agreed to join the conspiracy; and (3) one of the persons committed an overt act in furtherance of the conspiracy." *United States v. Armstrong*, 550 F.3d 382, 403 (5th Cir. 2008) (citation omitted). A conviction for mail fraud under 18 U.S.C. § 1341 (Counts XVI and XVII) "requires the Government to prove beyond a reasonable doubt (1) a scheme to defraud, (2) which involved use of the mails, and (3) that the mails were used for the purpose of executing the scheme." *Krenning*, 93 F.3d at 1262-63 (citation omitted).

Although Wade contends that "the testimony at trial did not establish that [she] knowingly or intentionally participated in the scheme," the evidence on record provides a legally sufficient basis for the jury to conclude that Wade was a willing participant in the charged conspiracies and underlying acts of mail fraud. At trial the Government introduced evidence establishing that Wade worked as the office manager of one of Winzer's clinics, Amigos. Johnson offered testimony regarding a meeting that took place between Winzer, Williams, and herself, during which Winzer distributed the allotted funds from the first fraudulent Hartford check Winzer's Brighter Days clinic had received. Johnson stated that Wade was present at that meeting. According to Johnson, Wade asked how she could "get in on it." Johnson and Williams then explained to Wade "how the process was going to work . . . [Johnson] would issue the checks and once she got them, then [Wade] would pay [Johnson], and that the checks would be made out to C. Johnson Claims Service."

The evidence introduced at trial corroborates Johnson's testimony. Wade was a signatory on the Amigos' Capital Bank account. Bank records for the Amigos' account at Capital Bank show that before January, 2006, the

14

account had a negative balance with deposits totaling only $9,000 for the month of December, 2005. In the month of January, 2006, four checks from Hartford (totaling $67,679.01) were deposited into the Amigos' account. Shortly thereafter, checks payable to Theresa Williams and "Charlie Johnson" were written from the Amigos' account, each in an mount equal to one-third the amount of revenue that had come in to the Amigos' account from Hartford in the previous month. The checks payable to Williams and Johnson were signed by Deandrea Wade. The record reveals a similar set of events in February, 2006, as well as March, 2006. All the checks addressed to Williams and Johnson drawn on the Amigos' account were signed by Deandrea Wade.

Johnson also caused fraudulent checks to be sent from Hartford to Total Rehab of Monroe, P.O. Box 4941, in Monroe, Louisiana. The application for this post office box was filled out and signed in the name of Deandrea Wade, 6422 Mosswood Drive. Johnson stated that Wade once called her and asked when Johnson was going to "send Amigos some more money."

When considered in total, a reasonable jury could easily conclude from the evidence presented that Wade knowingly and intentionally participated in the conspiracies to commit money laundering and the counts of mail fraud.

## III.

For all of the foregoing reasons, we affirm the judgment of the trial court.