86 F.3d 454
 1996 A.M.C. 2765, 34 Fed.R.Serv.3d 1364
 McCraig HUVAL; Kathy Huval; Plaintiffs,
v.
OFFSHORE PIPELINES, INC.; Bud's Boat Rntl Inc.; Defendants,
and
B & I WELDING SERVICES & CONSULTANTS, INC.;
Defendant--Third Party
Plaintiff--Appellee-Cross-Appellant,
Julius F. Eirich, Jr., Third
Party
Defendant-
Appellant-
Cross-Appellee,
v.
NORTH STAR AGENCY, INC., Third Party
Defendant-Appellant-Cross-Appellee,
and
Excell Mel Underwriters, Third Party Defendant.
 No. 95-30471.
 United States Court of Appeals,
Fifth Circuit.
 July 1, 1996.
 
 J. Douglas Sunseri, Nicaud & Sunseri, Metairie, LA, for B & I Welding Services & Consultants, Inc.
 Alan D. Ezkovich, Sessions & Fishman, New Orleans, LA, for Eirich and North Star Agency, Inc.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before BARKSDALE, DeMOSS and PARKER, Circuit Judges.
 ROBERT M. PARKER, Circuit Judge:
 
 
 1
 Following a personal injury claim and settlement involving one of its workers, B & I Welding brought the North Star Agency and its Principal, Julius "Sonny" Eirich, into this lawsuit, claiming a failure to procure insurance coverage. The district court found that North Star breached its duty to B & I, and entered a judgment in B & I's favor. However, the district court apportioned 40% of the fault to B & I's insurance consultant, Bernie Tappel, who was not a party to this action, and reduced the award proportionally. Both parties appeal. Finding no error, we affirm.
 
 I. FACTS
 
 2
 Sometime during 1983 or 1984, Benzoin Bliberg, the owner of B & I Welding, retained Mr. Burnette ("Bernie") Tappel as an insurance consultant. Upon Mr. Tappel's suggestion, sometime in 1985, B & I began using North Star Agency, Inc. and the president of North Star, Mr. Eirich, as its insurance agent. The evidence established that 95% of B & I's business consisted of servicing Offshore Pipelines, Inc. ("OPI"). From 1985 to 1988, B & I worked with both Mr. Tappel and Mr. Eirich in procuring the necessary insurance coverage.
 
 
 3
 On June 9, 1988, McCraig Huval, an employee of B & I Welding, was injured while working on a Barge owned by OPI. Huval sued OPI for his injuries, and OPI brought a third-party contractual indemnity claim against B & I. B & I, in turn, applied for coverage under its comprehensive general liability ("CGL") insurance policy. The district court dismissed B & I's claim against the CGL underwriter, finding that B & I had failed to satisfy a warranty to the CGL policy requiring alternate employer endorsements on its workers' compensation policy and excess maritime employer's liability policy.
 
 
 4
 B & I then sued North Star and Eirich for failing to procure the proper insurance coverage. After a bench trial, the district court found that B & I had reasonably relied on Eirich to ensure that B & I had the proper insurance coverage, and that he failed to exercise reasonable diligence in that regard. In addition, because Bernie Tappel, B & I's insurance consultant, had undertaken significant duties in obtaining insurance for B & I, the district court apportioned 40% of the fault to him.[1] North Star and Eirich appeal the judgment in favor of B & I, and B & I cross-appeals, contending that fault should not have been apportioned to Bernie Tappel.
 
 II. DISCUSSION
 
 5
 In order to recover for loss arising out of an insurance agent's failure to obtain insurance coverage, a plaintiff must prove the following: 1) an undertaking or agreement by the insurance agent to procure insurance; 2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; 3) that the actions of the agent warranted an assumption by the client that he was properly insured. Hebert v. Williams, 526 So.2d 835 (La.App. 3d Cir.1988), writ denied, 532 So.2d 150 (La.1988). The parties concede that this is the applicable law.
 
 
 6
 North Star correctly asserts that no duty arises under this rule if the insurance agent does not agree or undertake to procure insurance. North Star contends that the evidence is that B & I's insurance consultant, Mr. Tappel procured the London policies, and therefore it is not possible to find that North Star did also. North Star overstates the evidence regarding Mr. Tappel. The evidence shows, and the district court found, that Mr. Tappel played a significant role in obtaining B & I's insurance coverage. The evidence does not establish, however, that Mr. Tappel undertook to procure B & I's insurance to the exclusion of the North Star agency.
 
 
 7
 With regard to North Star's undertaking, the district court found that the applications actually submitted to the London broker were filled out by North Star. The district court also found that North Star bound the coverage and issued certificates of insurance to clients of B & I for the relevant policy period. In addition, North Star sent and received various correspondence regarding B & I's policies, obtained alternate employer endorsements for some of B & I's clients, and received commissions for being the insurance agent on B & I's policies. North Star contends that these findings do not support the district court's conclusion that it undertook to procure the policies in question. We disagree. These findings are more than adequate to support the district court's conclusion, and North Star fails to show that any of these findings are clearly erroneous.
 
 
 8
 North Star next contends that B & I's expert witness was not qualified to testify as an expert, and therefore B & I failed to present expert testimony sufficient to establish the extent or breach of North Star's duty.[2] The district court qualified B & I's expert, Mr. Louis Hauth, to testify as an expert witness, and indicated that it would consider the objections to Mr. Hauth's qualifications in determining the weight to be given to his testimony. "A trial court possesses broad discretion in ruling upon the qualifications of an expert." Banks v. McGougan, 717 F.2d 186, 190 (5th Cir.1983).
 
 
 9
 The record indicates that Mr. Hauth worked in the insurance industry for 32 years, with experience as an underwriter, accounts manager, and underwriting manager for various insurance companies. Mr. Hauth testified that he had substantial experience in obtaining maritime and oil field coverages from the London market through a surplus lines broker. North Star's objections were that Mr. Hauth had no experience acting as an insurance agent where an insurance consultant was involved, and no experience working directly with a London broker. Given Mr. Hauth's broad, general experience in the insurance industry, we cannot say that the district court abused its discretion in qualifying him as an expert witness.
 
 
 10
 North Star also contends that B & I failed to establish that North Star's breach of duty caused B & I's loss because B & I did not present evidence that North Star could have obtained an alternate employer endorsement for the maritime employer's liability policy. This argument is completely without merit. It is uncontroverted that the reason B & I was without coverage for Mr. Huval's injury is that alternate employer endorsements had not been obtained for OPI on B & I's maritime employer's liability and workers' compensation policies. The testimony established that a reasonably prudent insurance agent who was aware of the warranty and knew that OPI was a client of B & I would have attempted to obtain the necessary endorsements,[3] or would have asked the CGL underwriter to remove the warranty from the CGL policy. If these efforts were unsuccessful, a reasonably prudent agent would have promptly advised the insured of the resulting absence of coverage with regard to its work for OPI. It is undisputed that North Star took none of these steps. It is this lack of action that left B & I without coverage without its knowledge. The causal connection in this case is obvious.
 
 
 11
 In addition, North Star argues that the trial court erred in denying North Star's motion for summary judgment. "This Court made clear that it will not review the pretrial denial of a motion for summary judgment where on the basis of a subsequent full trial on the merits final judgment is entered adverse to the movant.... Once trial begins, summary judgment motions effectively become moot." Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir.1995). North Star also argues that the district court erred in denying its motion in limine and motion for entry of judgment for lack of expert proof. This argument is duplicative of arguments addressed above, and does not require further discussion.
 
 
 12
 North Star also claims error in the district court's modification of its scheduling order because it allowed B & I to submit a required expert report which had not been submitted prior to a previous deadline. The trial of this matter was continued from August 11, 1994 to February 2, 1995 because of an ongoing criminal trial. Over North Star's objection, the district court modified its scheduling order to reset deadlines and cut-off dates.
 
 
 13
 Rule 16 of the Federal Rules of Civil Procedure provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge...." "The Fifth Circuit has repeatedly held that it will review the modification of a pretrial order 'under the "abuse of discretion" standard.' " Spiller v. Ella Smithers Geriatric Center, 919 F.2d 339, 343 (5th Cir.1990) (quoting Bradley v. United States, 866 F.2d 120, 124 (5th Cir.1989)). The district court's decision to reset pretrial deadlines was prompted by a change in the court's schedule over which neither party had control. In addition, the district court found that North Star would not be prejudiced by the modified schedule since North Star had already been apprised of Mr. Hauth's proposed testimony through interrogatories, and since the continuation of the trial date would allow ample time to prepare for Mr. Hauth's testimony. Under the circumstances, the district court's determination that good cause existed to modify the scheduling order was not an abuse of discretion.
 
 
 14
 Finally, North Star contends that the trial court erred in failing to allocate fault to the London Broker, B & I, and OPI. North Star points to no evidence in the record and cites no authority that would justify allocating fault to these parties. Indeed, the record reveals no evidence that would allow this Court to conclude that any of these parties acted negligently in the present case. North Star points to a finding by the district court, in the context of determining the CGL underwriter's liability on the insurance policy, that B & I and OPI had been remiss in failing to see that the warranty was satisfied. North Star's argument that this observation is somehow equivalent to a determination of B & I's and OPI's comparative fault relative to North Star and thus became the law of the case is meritless on its face and does not merit further discussion.
 
 
 15
 On cross-appeal, B & I contends that the district court erred in apportioning fault to its insurance consultant, Bernie Tappel. Specifically, B & I contends that it was error to apportion fault to Mr. Tappel because he was not acting as a licensed insurance agent and had no legal authority to procure insurance for B & I. We may assume that B & I is correct that Mr. Tappel had no legal authority to act as an insurance agent. The uncontroverted evidence is that Mr. Tappel acted as B & I's agent at least for purposes of "softening up" the London insurance broker so that B & I would obtain a favorable premium. The district court properly concluded that although Mr. Tappel was not an insurance agent, he was an agent of B & I under Louisiana Civil Code Art. 2985. As an agent, Mr. Tappel "is responsible to his principal for the damages that may result from the non-performance of his duty." La.C.C. Art. 3002.
 
 
 16
 Although Mr. Tappel testified that he did not get involved with the coverage provisions of his client's policies, he also testified that he was familiar with the types of warranties at issue here. There was also evidence that in addition to softening up the London broker, Mr. Tappel met with the London underwriter who determined the terms of the CGL policy. A copy of a facsimile transmission was introduced into evidence that seemed to show that Mr. Tappel had received quote and warranty information on the CGL policy even though he was not the insurance agent.
 
 
 17
 Richard Katten, North Star's expert, testified that it was Mr. Tappel's practice to insulate the broker from the client, effectively having total control over the insurance relationship. Mr. Eirich testified that when working with Mr. Tappel, he would receive necessary information through Mr. Tappel. Mr. Eirich also testified that he could not submit applications for insurance directly to the London broker when working with Mr. Tappel; all applications had to go through Mr. Tappel's office first.
 
 
 18
 This evidence supports the conclusion that Mr. Tappel undertook a much broader responsibility in obtaining insurance for B & I than just softening up the London broker. Therefore, the district court's conclusion that Mr. Tappel had a duty to ensure that B & I obtained the necessary insurance coverage was not error.
 
 III. CONCLUSION
 
 19
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 The district court concluded that under Louisiana law it was required to allocate fault to culpable actors even if they were not a party to the lawsuit, like Mr. Tappel, citing Mathieu v. Imperial Toy Corp., 632 So.2d 375, 380 (La.App. 4th Cir.1994), rev'd on other grounds, 646 So.2d 318 (La.1994). Neither party contests this conclusion
 
 
 [2]
 North Star first asserts that the extent of the professional legal duty owed and breach of duty are established by expert testimony. As a general rule, this is correct. Ordinarily, the plaintiff has the burden to show by appropriate expert testimony that the defendant failed to exercise the same degree of skill and care exercised by others in the same profession in the same general area. However, there is an exception to the general rule where the professional's conduct is so manifestly below the reasonable standards dictated by ordinary intelligence that lay persons can infer the professional's negligence by applying a common sense standard. Nicholson & Loup, Inc. v. Carl E. Woodward, Inc., 596 So.2d 374, 381 (La.App. 4th Cir.1992), writ denied, 605 So.2d 1098 (La.1992). Because we find that the district court did not abuse its discretion in allowing B & I's expert testimony, we need not decide whether such testimony was necessary in this case
 
 
 [3]
 The district court found that North Star, through Eirich, knew or should have known that OPI was B & I's primary client. North Star does not attempt to show that this finding was clearly erroneous