# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 9, 2011

No. 10-50693

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

LESVIA BARRERA,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:08-CR-790-1

Before KING, DAVIS, and GARZA, Circuit Judges.

PER CURIAM:[*]

A former executive director of a public housing authority appeals from her final judgment of conviction for conspiring to defraud the United States Department of Housing and Urban Development by obtaining and aiding to obtain the payment of false, fictitious, or fraudulent claims, in violation of 18 U.S.C. § 286. She challenges the jury instructions, argues that the evidence adduced at trial was insufficient to support her conviction, and argues that the indictment was duplicitous because it joined two separate offenses in a single

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50693

count, one of which was allegedly time-barred.  We affirm the judgment of conviction in all respects.

## I.  FACTUAL BACKGROUND

Defendant–Appellant Lesvia Barrera, together with her nephew and co-defendant, Juan Antonio Sifuentes, was charged in a single-count indictment with having

> knowingly and intentionally combined, conspired, confederated and agreed with each other and others, known and unknown, to defraud the United States Department of Housing and Urban Development by obtaining and aiding to obtain the payment of a false, fictitious, and fraudulent claim, all in violation of Title 18, United States Code, Section 286.[1]

The factual basis for the claim is as follows:  From 2001 to 2004, Barrera was the executive director of the Eagle Pass Housing Authority ("EPHA") in Eagle Pass, Texas.  The EPHA is an organization funded by the United States Department of Housing and Urban Development ("HUD") that provides public housing to low-income individuals.  Part of Barrera's responsibilities as the executive director for the EPHA included managing the day-to-day operations of the EPHA and administering the EPHA's budget and finances.  Barrera was also responsible for ensuring the EPHA's compliance with its procurement policy.  Barrara testified that she relied heavily on her staff to procure bids for construction work, but conceded that she was ultimately responsible for reviewing the proposals and awarding the contracts in compliance with HUD and EPHA requirements.  She testified that her approval was required for payment of all invoices, and checks to vendors could not be issued without her approval.  She also had the sole authority to draw down funds from the grant

---

[1] The statute provides: "Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years, or both."  18 U.S.C. § 286.

No. 10-50693

that HUD awarded the EPHA for facilities repairs, and she was responsible for submitting backup documentation such as purchase orders and vendor comparable forms to HUD in support of her requests.

Pursuant to the EPHA's procurement policy, Barrera was prohibited from directly or indirectly participating in the selection, award, or administration of any contract to any company in which she or any of her relatives possessed an interest. Barrera's nephew, Sifuentes, managed Maverick Homes, a construction company in Eagle Pass, Texas. In 2001, and again in 2003, Maverick Homes performed asphalt repair work on several of the EPHA's parking lots. At trial, the government sought to establish that Sifuentes and Barrera conspired to conceal the fact that Sifuentes's company did the work in order to evade the procurement policy's prohibition against awarding contracts to family members. The government presented evidence at trial that Maverick Homes created false invoices indicating that two companies, South Texas Construction ("STC") and Pina's Plumbing ("Pina's"), performed the parking lot repairs. Jorge De Leon and Roberto Pina, the owners of STC and Pina's, testified that they did not do the parking lot repairs, they were not contacted to do the work, and as a general matter do not do asphalt work at all. They testified that the invoices submitted to the EPHA were forgeries.

With these invoices, Barrera authorized EPHA to issue checks to STC and Pina's for the parking lot repairs—$5,300 to STC for the repairs in 2001, and $12,500 to Pina's for the additional repairs in 2003. Copies or drafts of the invoices were found in Maverick Homes's files, along with photocopies of the EPHA checks issued to Pina's and STC. Pina and De Leon both testified that Sifuentes personally delivered the checks to them to pay off debts owed to STC and Pina's for work that those companies performed for Maverick Homes.[2]

---

[2] The record contains no evidence about how the checks ended up in Sifuentes's hands.

No. 10-50693

Barrera submitted to HUD the false invoices, along with vendor comparable forms and purchase orders naming STC and Pina's as the contractors on the asphalt repair jobs, to support Barrera's request for reimbursement. The documentation that Barrera submitted to HUD gave no indication that Sifuentes's company, Maverick Homes, actually performed the work. Margaret Sandoval, EPHA's grant administrator for HUD, testified at trial that she would not have approved the reimbursements had she known about Maverick Homes's involvement or that the named contractors did not actually do the stated work.

Sifuentes and Barrera were tried together, and the jury returned a guilty verdict on November 19, 2009. Barrera appeals from the district court's final judgment of conviction.

## II. DISCUSSION

### A.    "Deliberate Ignorance" Instruction

Barrera's chief contention on appeal is that the district court committed reversible error in charging the jury with a "deliberate ignorance" instruction. "The standard of review of a defendant's claim that a jury instruction was inappropriate is whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Mendoza–Medina*, 346 F.3d 121, 132 (5th Cir. 2003) (citation and internal quotation marks omitted). At the conclusion of trial, the district court gave the following charge to the jury regarding the elements of the charged conspiracy:

> For you to find either defendant guilty of the crime charged in Count One you must be convinced that the government proved each of the following beyond a reasonable doubt: First, that two or more persons directly or indirectly reached an agreement to defraud the United States or any department thereof by obtaining or aiding others to obtain the payment of a false, fictitious or fraudulent claim; second, that the defendants joined in the agreement willfully,

4

that is with the intent to further its unlawful purpose; third, that a defendant or the defendant knew that the claim was false, fictitious or fraudulent; and fourth, that the false, fictitious or fraudulent claim was material.

The district court further charged, in relevant part, that "[i]f a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part." The district court defined the word "knowingly" to mean that "the act was done voluntarily and intentionally, not because of mistake or accident."

The district court also gave the following "deliberate ignorance" instruction, which is at issue here:

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of a defendant cannot be established merely by demonstrating that a defendant was negligent, careless or foolish, knowledge can be inferred if the defendant deliberately blinded himself or herself to the existence of a fact.

"A deliberate ignorance instruction is designed to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge." *United States v. Nguyen*, 493 F.3d 613, 618 (5th Cir. 2007) (citation and internal quotation marks omitted). The test is whether "the evidence shows (1) subjective awareness of a high probability of the existence of illegal conduct and (2) purposeful contrivance to avoid learning of the illegal conduct." *Id.* at 619 (citation and internal quotation marks omitted). We review the district court's decision to use the deliberate ignorance instruction under an abuse of discretion standard. *Id.* In determining whether the evidence supports the use of the instruction, "we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the

Government." *Id.* (quoting *Mendoza–Medina*, 346 F.3d at 132) (internal quotation marks omitted).

We have frequently stated that the deliberate ignorance instruction "should rarely be given" and "is appropriate only when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." *United States v. McElwee*, – F.3d –, 2011 WL 2686447, at *7 (5th Cir. July 12, 2011) (citation and internal quotation marks omitted). We set a high bar for use of the instruction in recognition of the potential dangers it creates for a criminal defendant: "Because the instruction permits a jury to convict a defendant without a finding that the defendant was actually aware of the existence of illegal conduct, the deliberate ignorance instruction poses the risk that a jury might convict the defendant on a lesser negligence standard—the defendant *should* have been aware of the illegal conduct." *United States v. Lara–Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990).

Barrera argues that giving the instruction was error because it was not supported by the evidence. She contends that the record contains no support for an inference that Barrera was subjectively aware of the probability—but contrived to avoid learning—that Sifuentes, rather than Pina's or STC, performed the parking lot repair work, and that the claims she submitted to HUD were therefore false or fraudulent. Rather, she maintains that she was actually unaware of any wrongdoing and, at worst, acted only negligently. She argues that the district court's error in giving the deliberate ignorance instruction was further compounded by its refusal to instruct the jury on Barrera's "good faith" defense as a balancing instruction.[3] Barrera contends that

---

[3] The proposed instruction stated, in relevant part: "Good faith is a complete defense to the charge of conspiracy in the indictment since good faith on the part of a defendant is inconsistent with intent to defraud or willfulness which is an essential part of the charges. . . . Therefore, if you find that you have a reasonable doubt as to whether or not a defendant acted in good faith, then you shall acquit the defendant."

No. 10-50693

giving the deliberate ignorance instruction but denying the requested "good faith" instruction allowed the jury to convict her without a finding of criminal intent, and prevented her from presenting a defense that she acted in good faith and without intending to defraud HUD. We conclude that the district court did not abuse its discretion in giving the deliberate ignorance instruction.

Barrera admitted at trial that she had the ultimate responsibility for ensuring compliance with the EPHA's procurement policy and with federal law. It is not disputed that all paperwork for the procurement projects came across Barrera's desk for her approval. Barrera admitted that she signed both the STC and the Pina's Plumbing checks that ended up in Sifuentes's hands. Barrera admitted that she approved and submitted to HUD invoices purporting to be from Pina's and STC that evidence at trial established to be forgeries, and purchase orders falsely indicating that STC and Pina's performed the asphalt work.

Although Barrera conceded that she was ultimately responsible for the content and accuracy of the information that she submitted to HUD, Barrera maintained throughout her testimony that she wholly relied on her staff to procure vendor bids and to obtain and submit accurate paperwork that she could submit to HUD. Barrera made clear through her testimony that she made no effort to independently verify any of the information that her employees allegedly gave her in relation to the transactions at issue in this case, and maintained that she was therefore actually unaware of the illegal scheme that her employees were allegedly carrying on with Sifuentes.

Denial of knowledge, alone, may be insufficient to warrant a deliberate ignorance instruction. However, we conclude that Barrera's professed lack of knowledge based on her blind reliance on her employees, when combined with evidence of suspicious circumstances surrounding the 2001 and 2003 asphalt repairs, gives rise to an inference that, even if Barrera was not fully cognizant

7

of her nephew's involvement in the parking lot repairs, she was aware of the possibility and denied confirmation of it. "Suspicious and erratic behavior may be sufficient to infer subjective awareness of illegal conduct." *Nguyen*, 493 F.3d at 620. Likewise, a deliberate ignorance instruction may be appropriate "if the circumstances . . . were so overwhelmingly suspicious that the defendant's failure to conduct further inspection or inquiry suggest a conscious effort to avoid incriminating knowledge." *Id.* at 621 (citation and internal quotation marks omitted). Under the facts of this case, Barrera's professed blind reliance on her staff members was both suspicious in and of itself, as well as evidence that she assiduously avoided knowledge of an ongoing conspiracy.

The evidence suggests that there were suspicious circumstances in the procurement process relating to the 2001 and 2003 asphalt repairs, which Barrera apparently never questioned, and which she explains away through her reliance on her employees. For instance, she never questioned whether a company called Pina's Plumbing was competent to perform asphalt repairs, and approved Pina's invoice and submitted it and other documentation without verification of their accuracy.[4] Barrera shifted the blame for the false documentation to her employees and disclaimed any actual knowledge, and in doing so placed her subjective awareness at issue. *Cf. United States v. Mir*, 525 F.3d 351, 359 (4th Cir. 2008) ("The record contains myriad examples of Mir attempting to shift the blame for the labor certification fraud onto his employees, claiming he was unaware of any criminal activity. This is the type of situation for which a willful blindness instruction was intended, and the district court did not abuse its discretion in giving one.").

---

[4] Further, Barrera admitted that she issued a check for STC for the 2001 asphalt repairs prior to receiving any vendor comparable forms from her staff relating to STC's bid, and that she herself filled out a vendor comparable form naming Pina's as the sole bidder for the 2003 asphalt repairs, although she conceded that she never contacted Pina's about the bid. She claims that took these actions based on information provided by her employees.

No. 10-50693

Barrera insists that her failure to inquire into the veracity of the paperwork submitted by her staff proves merely that she was a negligent manager. Even crediting Barrera's testimony that her employees provided the false information and fraudulent documents that she submitted to HUD, with the inference that it was Barrera's employees that were conspiring with Sifuentes, the fact that she made no effort to verify any of the information on which she relied in preparing her reimbursement requests for HUD raises an inference that she purposefully hid her head in the sand. The evidence is, naturally, circumstantial. However, when considered in its totality, we find that the cumulative effect of the evidence sufficiently supports an inference that Barrera was subjectively aware of the probability of illegal conduct but purposefully avoided learning of it.

We also find that the district court did not abuse its discretion in denying Barrera's requested balancing instruction. "The district court will not abuse its discretion when it denies a proffered instruction unless this instruction (1) was a correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *United States v. Jobe*, 101 F.3d 1046, 1059 (5th Cir. 1996) (citation and internal quotation marks omitted); *see also United States v. Gutierrez–Munoz*, 83 F.3d 419, (5th Cir. 1996) (per curiam) (district court was not required to instruct jury on defendant's "lack of knowledge" defense as a balance to a deliberate ignorance instruction where "the charge as given was substantially correct and did not seriously impair the defendant's ability to present" his theory of defense).

Barrera's theory of defense, as she argues on appeal, was that she was ignorant of the falsity of the claims submitted to HUD because she relied on her staff to obtain the bids and submit accurate paperwork, and that she was merely

9

an unwitting participant in her nephew's scheme. To find Barrera guilty under the instruction given, the jury was required to find, beyond a reasonable doubt, that an agreement was reached "to defraud the United States," that Barrera "joined in the agreement willfully, that is with the intent to further its unlawful purpose," and that its purpose was "to obtain the payment of a false, fictitious or fraudulent claim." Thus, the jury was instructed that the government was required to prove intent to defraud. Moreover, the challenged deliberate ignorance instruction itself charged that knowledge "cannot be established merely by demonstrating that a defendant was negligent, careless or foolish." Thus, the jury was instructed that a finding that Barrera was merely negligent was insufficient for a conviction. Barrera was not prejudiced because the district court failed to give a "good faith based on lack of intent to defraud" instruction; the proposed instruction was covered by the jury charge as a whole, and Barrera was able to argue that she lacked intent to defraud as a defense to liability for the charged offense.

## B.    Sufficiency of the Evidence

Barrera maintains that there was insufficient evidence at trial to establish the existence of an intentional conspiratorial agreement or her knowledge that the claims submitted to HUD were false, fictitious, or fraudulent, as required to support her conviction under 18 U.S.C. § 286. "In reviewing the sufficiency of the evidence, we view the evidence and the inferences drawn therefrom in the light most favorable to the verdict, and we determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Id.* (citation and internal quotation marks omitted).

No. 10-50693

To make out a claim for a violation of 18 U.S.C. § 286, the government was required to prove beyond a reasonable doubt "that the defendant entered into a conspiracy to obtain payment or allowance of a claim against a department or agency of the United States; that the claim was false, fictitious, or fraudulent; and that the defendant knew at the time that the claim was false, fictitious, or fraudulent." *United States v. Leahy*, 82 F.3d 624, 633 (5th Cir. 1996). Furthermore, where the conspiracy allegedly involves the making of false and fraudulent statements, § 286 requires proof that "the conspirators agreed that those statements or representations would have a material effect on the Government's decision to pay a false, fictitious, or fraudulent claim." *United States v. Saybolt*, 577 F.3d 195, 205 (3d Cir. 2009).

Barrera argues that the evidence is insufficient to show the existence of a conspiratorial agreement. Barrera testified that she never contacted Sifuentes about working for EPHA, and she contends that the record is devoid of any direct evidence that she and Sifuentes communicated at all between 2001 and 2003—much less that Barrera entered into a conspiratorial agreement with him. Barrera's contention is without merit. "[I]t is well-settled that the government does not need to show that the conspiratorial agreement was explicit or formal—proof of a tacit agreement is sufficient." *United States v. Freeman,* 434 F.3d 369, 376 (5th Cir. 2005). Further, although Barrera testified that she lacked actual knowledge that STC or Pina's did not in fact perform the parking lot repairs, "a conspirator's knowledge and intent can be shown by circumstantial evidence . . . and a common purpose and plan may be inferred from a development and collocation of circumstances." *United States v. Okoronkwo*, 46 F.3d 426, 431 (5th Cir. 1995) (citations and internal quotation marks omitted). The jury was entitled to disregard Barrera's self-serving testimony, and apparently did. Having reviewed the record, we find that the

evidence provided a legally sufficient basis for the jury to find Barrera guilty of the charged offense.

## C.     Duplicity and Statute of Limitations

Barrera challenges the district court's denial of her pre-trial motion to dismiss the indictment on the basis that it is duplicitous. "We review *de novo* a claim that an indictment is duplicitous." *United States v. Miller*, 520 F.3d 504, 512 (5th Cir. 2008). "Duplicity occurs when a single count in an indictment contains two or more distinct offenses." *Id.* "If an indictment is duplicitous and prejudice results, the conviction may be subject to reversal." *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608 (5th Cir. 1991). "In reviewing an indictment for duplicity, our task is not to review the evidence presented at trial to determine whether it would support charging several crimes rather than just one, but rather solely to assess whether the indictment itself *can be read* to charge only one violation in each count." *United States v. Mauskar*, 557 F.3d 219, 225 (5th Cir. 2009) (citations and internal quotation marks omitted).

Barrera contends that the indictment is duplicitous because it improperly joins two separate and distinct conspiracies—one allegedly occurring in 2001, and the other in February 2003—into a single conspiracy theory. Barrera contends that each allegedly false claim submitted to HUD defines a separate conspiracy and, properly charged as a separate count, the earlier conspiracy would be barred by the statute of limitations. Barrera argues that the error in the indictment was not harmless because, had the indictment charged two separate conspiracies, the jury could have found Barrera guilty of only the "patently time-barred" 2001 conspiracy, the 2003 conspiracy, or both.

That the indictment alleged the submission of two false claims in a single count does not render the indictment duplicitous, for a single conspiratorial agreement may have as its object the commission of separate crimes on different occasions. "The allegation in a single count of a conspiracy to commit several

crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.' " *United States v. Cooper*, 966 F.2d 936, 939 (5th Cir. 1992) (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942) (internal quotation marks omitted)).  "The principal considerations in counting the number of conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *United States v. Mitchell*, 484 F.3d 762, 770 (5th Cir. 2007) (citation and internal quotation marks omitted).  Although the indictment concerns the submission of two separate false claims, we agree with the district court that Barrera's and Sifuentes's actions in 2001 and 2003 "shared a common purpose in carrying out a similar scheme of giving illegal preferential treatment based on [their] familial relationship, falsifying invoices to hide that relationship, and submitting these fraudulent invoices to the United States to obtain payment for contract work performed."  Although it may have been possible for the government to allege two separate conspiracies, the indictment can be read as alleging only a single conspiracy, whose object involved the filing of multiple false claims.  *See Mauskar*, 557 F.3d at 225.  "[Whether] the evidence at trial may have established two distinct conspiracies . . . is irrelevant" to the determination of whether an indictment was duplicitous.  *Id.*  Accordingly, we find no error in the district court's denial of Barrera's motion to dismiss the indictment.[5]

We also hold that the indictment was not time-barred.  Prosecutions for violations of 18 U.S.C. § 286 are subject to a five-year statute of limitations, *see* 18 U.S.C. § 3282(a), which "runs from the last overt act of the conspiracy alleged in the indictment and proved at trial," *United States v. Mann*, 161 F.3d 840, 856

---

[5] We note that, although Barrera contends that the jury could have found her guilty for either one conspiracy or two, Barrera did not request a multiple conspiracies or unanimity instruction.  *Cf. Baytank*, 934 F.3d at 609–610 (rejecting argument that defendant was deprived of his right to a unanimous jury verdict, where defendant neither requested a unanimity instruction nor objected to the charge given on that basis).

No. 10-50693

(5th Cir. 1998).  Barrera does not dispute that the last overt act in furtherance of the conspiracy alleged in the indictment was Barrera's submission of a reimbursement form to HUD relating to the 2003 asphalt repairs on August 14, 2003.  The indictment was filed on August 6, 2008, just less than five years later, and was therefore within the limitations period.[6]

### III.  CONCLUSION

For the foregoing reasons, we affirm Barrera's judgment of conviction.

---

[6] Because we find that the indictment alleges a single conspiracy within the limitations period, we do not address the district court's alternative holding that the statute of limitations was suspended by the Wartime Suspension of Limitations Act, 18 U.S.C. § 3287.