# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30933

United States Court of Appeals
Fifth Circuit

**FILED**
September 13, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

TRACY RICHARDSON BROWN,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Tracy Brown was convicted of multiple health care fraud and kickback offenses perpetrated through her medical equipment company. We must decide whether the evidence introduced at trial was sufficient to sustain her conviction; whether the jury was properly given a deliberate ignorance instruction; whether an expert was properly allowed to testify; and whether a leadership enhancement was properly included in her Guidelines calculation. Because we find that the trial court did not err on any of these points, we AFFIRM.

No. 16-30933

## I.

Brown was the co-owner of the medical equipment company Psalms 23. Psalms 23 provided equipment for Medicare beneficiaries. In 2005, Brown hired marketers to assist in finding patients for whom Psalms could provide medical equipment. For legitimate equipment companies, patient referrals often come directly from doctors who prescribe the equipment to patients. For her marketers, Brown emphasized that they should refer patients who needed motorized wheelchairs and scooters, as these were the most profitable pieces of equipment. Instead of paying the marketers a set salary, Brown proposed a commission system; marketers would be paid on a per-piece-of-equipment basis. Federal law forbids commission payments for referrals, as they greatly increase the incentive for fraud (that is, for recruiting patients who do not need the equipment). *See* 42 U.S.C. § 1320a-7b(b)(1)(A). As a result of this setup—and Brown's encouragement to refer the most profitable equipment—many patients were billed for the same equipment, which is highly unusual for a legitimate supplier. Indeed, expensive power wheelchairs, wheelchair accessories, and orthotics represented more than 95% of Psalms' Medicare billings. And sometimes Psalms billed Medicare for expensive versions of the orthotics while purchasing much cheaper counterparts to give to the patients. To detail just one example of this upcoding, Psalms routinely billed Medicare $830 for a sophisticated back brace (HCPCS code L0631), but provided beneficiaries with a different brace (HCPCS code L0625) that cost about $11. By upcoding this one brace 334 times, Psalms billed Medicare more than a quarter million dollars above what the brace given to beneficiaries cost.

For just about all the equipment that was ordered, only two doctors were used to certify that the equipment was needed. Both doctors testified that they never met with Brown, working instead through the marketers to refer patients to Psalms. Many of these patients did not actually need the

No. 16-30933

equipment the doctors prescribed.  And that was if the doctors even wrote out the prescription; one marketer stated that she filled out prescriptions and progress reports for patients herself and only used the doctor as a rubber stamp.  Another doctor who evaluated patients and referred them to Brown, asked that payments be made out to her mother to avoid "the appearance of impropriety."

In fall of 2007, Brown hired a consultant to show her the "right way" to bill Medicare.  The consultant identified a number of the fraud indicators identified above and then some:

- Psalms did not have a physical therapist, which Medicare requires to ensure that the orthotics fit the beneficiary.

- Psalms did not collect copays from beneficiaries, something Medicare requires and that helps ensure that the equipment is needed.

- Psalms repeatedly ordered bilateral braces—one for each side of the body—meaning the patient was immobilized, which did not "make any sense" to the consultant.

- Medicare did not pay for full series of orthotics (knee brace, arm brace, back brace, and heating pad) that Psalms was billing as "arthritis kits."

- Psalms never billed for manual wheelchairs, instead selling only the more expensive power wheelchairs.

- At least one marketer (that the consultant was aware of) was being paid on commission instead of a set salary.

- That using two doctors as the same source for just two types of equipment was "a flag," and it was also unusual for the referral from the doctor to be on the Psalms letterhead instead of the doctor's prescription pad.

Although the consultant told Brown about these problems, Brown did not do anything different going forward.

3

No. 16-30933

The scheme collapsed in fall 2008 when Psalms was audited by a fraud contractor that investigates companies for Medicare. After discovering that Psalms was missing documentation for a number of its patients, the investigator informed Brown that she needed to submit additional records to Medicare. Brown failed to do so. The contractor ultimately made a criminal referral and caused the suspension of Psalms's Medicare payments. Around that time, Brown's attorney sent a letter to the investigator informing her that a "self-audit" had determined that one of the marketers had forged patient information on a prescription. The letter stated that Brown had discovered the fraud in 2008, well before the investigation had started, but did not explain why this had not been reported earlier.

Brown was ultimately charged with health care fraud, paying kickbacks for Medicare referrals, and conspiring to commit those two offenses. At trial she essentially conceded the kickback charges. In defending the fraud claims, she claimed to have no knowledge that the claims being submitted were false. Brown was convicted on all counts and now appeals.

## II.

### A.

We begin with the challenge to the deliberate ignorance instruction, because the propriety of that instruction affects the level of knowledge needed to sustain the fraud convictions. A deliberate ignorance instruction informs the jury that "it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge." *United States v. Nguyen*, 493 F.3d 613, 618 (5th Cir. 2007). Such an instruction may be given even for conspiracy charges. *See id.*; *United States v. Barrera*, 444 Fed. App'x 16, 22 (5th Cir. 2011); *see also United States v. Alston-Graves*, 435 F.3d 331, 337–42 (D.C. Cir. 2006) (reviewing and questioning the application of the deliberate ignorance instruction to conspiracy cases). The instruction is proper "when the

4

evidence shows that: (1) the defendant was subjectively aware of high probability of the existence of illegal conduct, and (2) the defendant purposely contrived to avoid learning of the illegal conduct." *United States v. Miller*, 588 F.3d 897, 906 (5th Cir. 2009).

We have repeatedly cautioned that the instruction "should rarely be given," *United States v. Kuhrt*, 788 F.3d 403, 417 (5th Cir. 2015), but this is the paradigmatic case. The thrust, if not the entirety of Brown's defense, was that even if Psalms was engaged in a massive scheme to defraud Medicare, she was not aware of her underlings' crime. But ample evidence showed that as an owner and involved operator of the company, Brown was subjectively aware of a high probability of fraudulent billing. She was paying commissions to the marketers, which is not just a separate crime but probative that she knew about the fraudulent claims. She was not asking beneficiaries for copays. She pushed marketers to only find patients who needed expensive equipment. Brown also knew her marketers were filling out prescriptions and progress reports, even though they should have been completed by a physician. And the company she owned was also making exorbitant profits due to the upcoding we have discussed. *See United States v. Willett*, 751 F.3d 335, 341–42 (5th Cir. 2014) (noting that high profit margins can be circumstantial evidence of fraud (citing *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007))).

But what really sinks Brown's objection to the instruction is the consultant's visit in 2007. At that meeting, the consultant pointed out a number of these problems with the business: Psalms repeatedly waived co-pays, billed the same pieces of equipment for many of its patients; billed multiple pieces of equipment to a single patient that could not use all the equipment; and failed to follow the requirement that a therapist fit certain equipment for its patients. Brown was further told that she would be held responsible for Psalms's practices if Medicare came calling. Despite these

warnings, she allowed the recruiters, doctors, and employees who handled billing—the people she is now saying are responsible for the fraud rather than her—to continue operating as usual while she tried to remain above the details of the criminal conduct.

A deliberate ignorance instruction is intended for this situation in which Brown knew it was highly likely that something illegal was afoot, but tried looking the other way while reaping the benefits of the likely criminal activity. *See United States v. Barson*, 845 F.3d 159, 166 (5th Cir. 2016) (affirming deliberate ignorance instruction when, in part, the defendant relied on his own lack of knowledge of Medicare forms to argue that he suspected no wrongdoing); *see also United States v. Delgado*, 668 F.3d 219, 227–28 (5th Cir. 2012). The trial court thus did not abuse its discretion in giving the instruction.

## B.

This conclusion also impacts our review of whether the evidence was sufficient to support the verdict. Brown essentially challenges only the knowledge element of the fraud conviction, and what we have just said means the evidence need only support a jury finding that she was deliberately ignorant of the ongoing fraud. Based on the evidence detailed above, the jury was entitled to draw that conclusion. And our deference to the jury's view of the evidence is even stronger than it usually is because Brown failed to renew her motion for a directed verdict after the close of the evidence. We thus can overturn the jury's verdict only for a "manifest miscarriage of justice." *United States v. Davis*, 690 F.3d 330, 336 (5th Cir. 2012). That occurs only if there is no evidence pointing to guilt or because the evidence is so tenuous that a conviction would be shocking. *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007). Brown makes a number of arguments that might have convinced a jury to rule the other way. She emphasizes that none of the

marketers who testified said they discussed with her that the claims were fraudulent, views her hiring of the consultant as an attempt to comply with the law, and argues she was not directly involved in the billing. There need not be direct evidence of guilt, however, and the jury's decision to reach a different conclusion based on the substantial circumstantial evidence the government highlights does not come close to being a miscarriage of justice.

## C.

As for the final alleged trial error, the district court did not abuse its discretion in admitting Jonathon Bergey's expert testimony. Rule 702 lists criteria a trial court can use to determine whether a witness may give expert testimony, but as the Supreme Court explained in *Kumho Tire* these factors are neither exclusive nor dispositive. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also* Fed. R. Evid. 702. The ultimate inquiry is "relevance and reliability." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) ("As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdication of its gate-keeping function."). And trial judges have leeway in determining whether an expert's testimony is reliable. *Kumho Tire*, 526 U.S. at 152.

Bergey was offered as an expert in Medicare and the practices of medical equipment providers. This is not the type of cutting-edge scientific evidence for which the *Daubert* factors are often most vigorously contested. Bergey has worked for a Medicare claims-processing contractor since 2003. In his many roles with the company, he has had to learn—and teach others—the general practices and policies of both Medicare and payments to medical equipment companies. He also has written and edited manuals instructing suppliers on how to properly bill Medicare and comply with its guidelines. The trial court held that this experience qualified Bergey as an expert.

No. 16-30933

That was not error.  We have routinely affirmed district courts that admit the testimony of experts based on the kind of experience Bergey has.  *See Mike Hooks Dredging Co. v Marquette Transp. Gulf-Inland, LLC*, 716 F.3d 886, 894 (5th Cir. 2014) (affirming expert based on his experience in maritime navigation); *United States v. West*, 58 F.3d 133, 140 (5th Cir. 1995) (admitting IRS agent as expert witness on tax evasion based on her work experience and accounting education); *Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454, 458 (5th Cir. 1996) ("Given [expert']s broad, general experience in the insurance industry, we cannot say that the district court abused its discretion in qualifying him as an expert witness.").

## III.

Brown's only challenge to her sentence (80 months on the fraud counts; 60 months on the kickback counts) is to dispute the application of an enhancement that found she was "an organizer or leader of a criminal activity that involved five or more participants."  U.S.S.G. § 3B1.1(a).  Of course, as the owner and operator of Psalms, she was a leader of the company.  And she brought into the company a number of the marketers who engaged in the fraudulent activity.  *See United States v. Brown*, 727 F.3d 329, 341 (5th Cir. 2013); *United States v. Liu*, 960 F.2d 449, 456 (5th Cir. 1992) (both applying the enhancement when the defendant recruited others into the conspiracy).

Brown's argument against the enhancement is just recycling the argument she made to challenge her fraud convictions: that she did not know about the fraud.  But given that the jury found she was a knowing participant in the conspiracy to defraud Medicare, it readily follows that she was a leader of that criminal enterprise.  The district court did not clearly err in applying the enhancement.

The judgment and sentence are AFFIRMED.